UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OPTIONS PUBLIC CHARTER SCHOOL<br>1375 E Street, N.E.<br>Washington, D.C. 20002<br><br>    Plaintiff<br><br>    v.<br><br>CAMILLE HOWE,<br>as next friend of the minor child,<br>A.H.<br>and<br>A.H., individually<br>3200 Buena Vista Terrace S.E.<br>Washington, D.C. 20020<br><br>Serve<br><br>Camille Howe<br>3200 Buena Vista Terrace, S.E.<br>Washington, D.C. 20020<br><br>Defendants | CIVIL ACTION NO. |

**COMPLAINT**

JURISDICTION

1. Plaintiff brings this Complaint seeking relief pursuant to the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C.§§ 1400 *et seq*. This Court has jurisdiction pursuant to 28 U.S.C.§§ 1331 and 1343; and pendant jurisdiction pursuant to 5 D.C.Mun. Regs.§§ 3000 *et seq*. Declaratory relief is authorized by 28 U.S.C.§§ 2201 and 2202.

2. Plaintiff is a District of Columbia Public Charter School which has elected to be its own local education agency (LEA) under IDEIA, for special education issues.

3. Defendant is the legal guardian of her minor child and they are currently residents of the District of Columbia and claimed D.C. residency for all or part of the time during the underlying administrative proceedings.

## FACTS

4. A.H. is a thirteen (13) year-old student who currently attends the Options Public Charter School ("Options") for the 2005-2006 academic school year.

5. On 18 October 2005, Options held a multi-discipline team (MDT) meeting to discuss whether A.H. needs special education services and the mother gave consent to Options to initiate evaluations.

6. On 12 January 2006, after several attempts to have mother attend another MDT meeting, Options convened the eligibility meeting to discuss the evaluations and decide whether A.H. was eligible for special education services.

7. The members of the MDT meeting agreed that A.H. did qualify for special education services as a learning disabled child, and the team agreed that she needed a self-contained special education program. Both the mother and father of A.H. agreed to this finding.

8. Options scheduled another meeting to draft the individualized education program (IEP).

9. On 26 January 2006, the MDT convened again to discuss the IEP and placment.

10. The team agreed with the proposed IEP, it's goals and objectives, the number of hours of special education and related services and the placement in the self-contained special education program at Options. The father, Gregory Bush signed and approved the IEP.

11. After the father left, the mother raised an objection to the full-time self-contained program and convinced the special education coordinator (SEC) at Options to reduce the

number of hours and the team agreed to lower the number of special education hours to fifteen (15) hours a week, down from twenty-four (24) hours a week. The related service of half an hour of counseling remained unchanged.

12. On 13 March 2006, the mother filed a due process complaint, alleging:
    Whether this student was denied FAPE due to the failure of DCPS and/or Options PCS to evaluate the student in all areas of suspected disability prior to making a determination of the appropriate disability code and special education eligibility.
    Whether this student was denied FAPE due to the failure of DCPS and/or Options PCS to provide her with an educational program consistent with her current IEP.
    Whether this student was denied FAPE due to the failure of DCPS and/or Options PCS to convene a legally constituted IEP team meeting to make the eligibility determination, determine the appropriate disability code and to develop an appropriate IEP and educational program for the student.
    Whether this student was denied FAPE due to Options PCS changing the number of service hours on the IEP without the participation of the parent or IEP team.
    Whether this student is entitled to an award of compensatory education due to lost services based upon violations regarding the student's IEP, services and/or placement.

13. On 27 March 2006, Options convened a resolution meeting to resolve the issues of the hearing complaint.

14. The resolution session ended without success because the student's mother and father could not agree to anything regarding the child's IEP.

15. On 12 May 2006, the District of Columbia Public School, Student Hearing Office convened a due process hearing with Ms. Tonya Butler-Truesdale presiding as the hearing officer.

16. Options offered twenty (20) documents as evidence and two (2) witnesses.[1]

---

[1] Although the Hearing Officer's Decision (HOD) (Attachment 1) mentions the participation of DCPS, in fact DCPS was dismissed from the case at the outset since the issues presented were essentially issues against Options.

17. The witnesses for Options were, Mr. Paris Adon the special education coordinator and Dr. David Cranford[2] a licensed clinical psychologist.

18. Mr. Adon testified that Options began the testing process because of learning difficulties the student was experiencing. He further testified that when the full-time special education program was considered no one questioned that until after the father, Mr. Bush left the meeting and that the mother and the team continued without the father for hours and decided to lower the hours because of mother's insistence.

19. Dr. Cranford testified that he tested the student and found she was a learning disabled student. He conducted several clinical measures to see whether there was any underlying emotional problems. He testified there were none. In the expert opinion of Dr. Cranford, he concluded there was no need for any additional testing.

20. The defendant, Ms. Howe offered no testimony to refute Mr. Adon's statement of the facts, nor was there any testimony to refute Dr. Cranford's testimony. In fact, the hearing officer, in her 23 May 2006 Hearing Officer's Decision (HOD) states:
    > The credible testimony of Paris Adon reveals that Options Public Charter School was aware of Petitioner's needs for special education services and attempted to address the concerns of the Petitioner's mother within a reasonable time period. (HOD at 3)

21. The hearing officer also found Dr. Cranford's testimony credible stating:
    > The testimony of Dr. Crawford (*sic*) regarding the sufficiency of the psychological evaluation which employed seven different assessment instruments was also compelling. This hearing officer fins (*sic*) the testimony of Dr. Crawford logical and credible. Dr. Crawford's deduction that the psycho-educational was sufficient given the non-predominate display of emotional triggers lends reason to the schools decision not to immediately employ clinical assessments. (HOD at 3)

22. The defendant, Ms. Howe offered no expert testimony. The only witness presented, Ms. LaTanya Higginbotham did not qualify as an expert in any educational field, even though

---

[2]The HOD mentions Dr. Crawford, which is a typographical error.

her self-proclaimed title is "special education advocate."

23. At one point, the hearing officer stated that she is known for her efforts to help parents and that the mother was not helping her case because of her demeanor and verbal outbursts. The hearing officer then asked mother to help her by telling the hearing officer why the mother felt that a speech and language assessment was necessary when Dr. Cranford testified that the student needed no further testing. The mother's reply was the child cursed often.

24. The defendant, Ms. Howe did not disturb the testimony of the two witnesses from Options.

25. Yet, the hearing officer, even after stating the Options witnesses were credible stated:
    However, it is entirely conceivable, given the nature of the parent's challenging participation in the hearing, that the mother's participation in the IEP meetings should have alerted Respondent Options that more comprehensive evaluations were warranted. (HOD at 3)

26. The hearing officer then goes on to state:
    The candid revelation of the mother of her own disability and the resulting conduct displayed during and after the hearing **conclusively** reveals that further evaluations are warranted." (Emphasis added). (HOD at 3)

27 The hearing officer then ordered Options to fund "independent speech and language evaluations, a clinical evaluation, an occupational therapy assessment, social history, and vision and hearing screening[3] within the superintendent's cost guidelines." (HOD at 4)

28. The remedy the hearing officer provided was not the remedy the defendant, Ms. Howe requested in the due process complaint. The complaint requested :

---

[3]At the hearing, the defendant, Ms. Howe revealed that the child recently had a physical and the hearing and vision were fine and therefore they were withdrawing the request for the vision and hearing screening.

>DCPS and/or Options PCS shall be ordered to conduct the following evaluations within 30 calendar days of the date of the Hearing Officer's Decision: Speech/Language Evaluation; Clinical Evaluation; Occupational Therapy Assessment; Social History; Clinical Evaluation; FBA and BIP; and Vision and Hearing Screening.

29. The complaint only asked for the independent assessments if Options failed to conduct the evaluations within the thirty days.

## COUNT I

30. Plaintiff repeats and realleges paragraphs 1 - 29.

31. Hearing Officer Butler-Truesdale erred in when she revealed her bias for the parent and against the school

## COUNT II

32. Plaintiff repeats and realleges paragraphs 1 - 31.

33. Hearing Officer Butler-Truesdale erred in finding that mother's behavior "conclusively reveals that further testing is warranted."

## COUNT III

34. Plaintiff repeats and realleges paragraphs 1 - 33.

35. Hearing Officer Butler-Truesdale erred in ordering Options to pay for independent assessments when the independent assessments were secondary to Options conducting the assessments within thirty days.

## COUNT IV

36. Plaintiff repeats and realleges paragraphs 1 - 35.

37. Hearing Officer Butler-Truesdale erred in when she did not find, as a conclusion of law, that Options denied the student a free appropriate public education yet she ordered

substantive relief to the mother.

38. Plaintiff repeats and realleges paragraphs 1 - 37.

39. Hearing Officer Butler-Truesdale erred in finding that Options did anything that violated IDEIA.

**WHEREFORE**, Plaintiff respectfully requests this court to:

1. Issue a judgment for Plaintiff and against Defendants on all aforementioned counts;

2. Order that the 23 May 2006, Hearing Officer's Decision be reversed, finding no denial of a free, appropriate, public education by Options.

3. Order an award of attorneys fees and costs to Plaintiff; and

4. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____/s/_____
William E. Houston, Esq.
D.C. Bar No. 450223
Dalton, Dalton, & Houston, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300 (O)
(703) 739-2323 (F)