1                So --

2                BY MS. TOWNS:

3        Q    Okay.  Was it on the record that

4    the parent was requesting additional

5    evaluations?

6        A    Yes, based on the decision to

7    have the student put in a full-time special

8    ed. program, the parent felt it was

9    necessary to have a more comprehensive

10   evaluation done, especially with the acting

11   out, the behavioral issues, the calls, the

12   constant calls that she's getting to make

13   sure that there were no other underlying

14   issues and based on, again, information that

15   was presented in Dr. Cranford's report.  We

16   wanted to insure because this was a student

17   coming from regular education being put in a

18   full-time special education program that

19   there was nothing else that was not clear to

20   the team before that decision was made, that

21   there was any other problem, any other

22   underlying problem.

```
 1              Q      Was there any indication that any

 2       testing had been conducted beyond the

 3       psycho-ed.?

 4              A      No.

 5              Q      Was there any discussion in the

 6       meeting concerning the need for a clinical?

 7              A      The parent requested a clinical

 8       evaluation, and she requested a clinical

 9       evaluation, a speech and language evaluation

10       and occupational therapy evaluation.

11              Q      And were any of these accepted

12       that they would do these?

13              A      No.   The Options team agreed that

14       they would not do those evaluations.

15              Q      Okay.   Did you have any

16       discussion with someone from the school

17       concerning the evals. outside of the

18       meeting?

19              A      After the meeting Mr. -- Don and

20       I did talk briefly about a clinical

21       evaluation.   He was inquiring as to whether

22       or not an independent could be done for a
```

1    set dollar amount, and I indicated to him

2    that I would inquire about that, and when I

3    did try to return the call, he had already

4    left Options Charter School.

5                  MS. TOWNS:  No further questions.

6                  HEARING OFFICER BUTLER-TRUESDALE:

7    Cross.

8                  MR. HOUSTON:  Yes.

9                       CROSS EXAMINATION

10                 BY MR. HOUSTON:

11        Q    Just for the record, when you

12    were saying "parent" throughout this whole

13    time, that was the mother.

14        A    The mother.

15        Q    Okay, and I believe you testified

16    to this.  You said that Options agreed to

17    the OT, but then when you listed out the

18    three tests, the OT, clinical, and speech

19    and language, that they didn't agree to any

20    of that.

21        A    Right.

22        Q    But they did agree to the --

1          A       Or anything else.

2          Q       But they did agree to the OT

3     thought.

4          A       Yes.

5               MR. HOUSTON:   Okay.   That's all I

6     have.

7               HEARING OFFICER BUTLER-TRUESDALE:

8     Any other witnesses, Ms. Towns?

9               (The witness was excused.)

10              MS. TOWNS:   No.

11              HEARING OFFICER BUTLER-TRUESDALE:

12    All right.   Closing.   Five minutes.

13              MS. TOWNS:   All right.

14              HEARING OFFICER BUTLER-TRUESDALE:

15    Or less.

16              (Laughter.)

17              MS. TOWNS:   Well, I will be

18    extremely brief.   The main issue that we

19    have today in this hearing is the issue of

20    Options failing to evaluate the student in

21    other areas of suspected disability prior to

22    making the determination that she required a

1       full-time special education with a

2       disability code of LD.

3                    I think that we've had testimony

4       here today that the parent did request

5       comprehensive evaluations from August '05,

6       and the mother was relying on the school to

7       determine which evaluations were appropriate

8       in order that a decision would be able to be

9       made as to what educational services Ashley

10      needed.

11                   It's on the record that while the

12      psychologist did a psycho-ed. evaluation,

13      that that was the only actual instrument

14      that was used to determine ████████'s need for

15      special education services.  I would hope

16      that the Hearing Officer would find that

17      such a drastic change in level of services

18      would warrant or based on the parent's

19      direct request for additional evaluations,

20      that Options is in violation of IDEIA by not

21      providing the parent with those evaluations,

22      which include speech-language evaluation, OT

1    evaluation, social history, FBA/BIP, and now

2    hearing screening.

3              HEARING OFFICER BUTLER-TRUESDALE:

4    Speech and language, FBA/BIP, hearing and

5    what else?

6              MS. TOWNS:   Hearing.   It was

7    speech-language, clinical evaluation, OT,

8    social history, FBA/BIP, and hearing

9    screening.

10             HEARING OFFICER BUTLER-TRUESDALE:

11   I'm sorry.   Believe it or not I blanked out.

12             MS. TOWNS:   Okay.

13             HEARING OFFICER BUTLER-TRUESDALE:

14   Just check off as I read to you and then you

15   can tell me what I missed.   Speech and

16   language, FBA, BIP, hearing, clinical and?

17             MS. TOWNS:   Social history.

18             HEARING OFFICER BUTLER-TRUESDALE:

19   Social History.   Is that all?

20             MS. TOWNS:   And OT.

21             HEARING OFFICER BUTLER-TRUESDALE:

22   So they agree to the OT.   So when is the OT?

1    Has the OT been completed  or is it --

2                PARTICIPANT:  Did you put in the

3    referral?  Okay.  So, yeah, probably within

4    the next few weeks, but I'll follow up.

5                HEARING OFFICER BUTLER-TRUESDALE:

6    Are you done with your closing?

7                MS. TOWNS:  Yes.

8                HEARING OFFICER BUTLER-TRUESDALE:

9    Okay.

10                MR. HOUSTON:  Thank you.

11                HEARING OFFICER BUTLER-TRUESDALE:

12    Mr. Houston.

13                MR. HOUSTON:  At no time did

14    Options Public Charter School deny ███████ a

15    free public education.  When Mother came to

16    ask for testing, the school started the

17    testing.  Dr. Cranford did a variety of

18    testing.  There's one report, but there is

19    seven things that he has done that's

20    reported on his evaluation.  So that's seven

21    different instruments.

22                The petitioners are in error when

1    they say that the psycho-educational is just

2    one instrument.  It is one report.  There is

3    also input from the teachers and the

4    parents.

5            The only testimony here from a

6    qualified licensed psychologist about the

7    emotional needs of this child was from Dr.

8    Cranford.  He had done the testing.  He did

9    see those issues that the mother and father

10   are talking about, but he made an informed

11   decision as a clinical psychologist that

12   those were issues related to severe learning

13   disabilities and not an underlying emotional

14   disturbance.

15           That testimony was uncontroverted

16   or incontroverted.  Never during this

17   process did the mother or the father request

18   additional testing until after -- until the

19   time of the hearing request.

20           The Petitioner is trying to

21   circumvent the IDEIA law.  If they had a

22   problem with Dr. Cranford's evaluation, they

1    should have stated what the problem with

2    that evaluation was and then requested an

3    independent evaluation.

4              Also, there's been much said here

5    about the fact that maybe Ms. Howe wasn't

6    aware of her rights.  She had been given her

7    rights.  She had no questions about it.

8    Understandably, some people are reticent to

9    say they don't understand their rights, and

10   they may not, in fact, know their rights.

11             However, in late February when

12   she contacted Ms. Towns and Ms.

13   Higginbotham, they were certainly full aware

14   of her rights, and the procedures required

15   under IDEIA.  They did not follow it.  They

16   just immediately went to a hearing decision.

17             This all comes about after one

18   parent signed a full-time IAP and the other

19   parent, the mother, disagreed with it.

20   Options is put in the middle ground of

21   trying to satisfy both parents, both of whom

22   who have rights under IDEA.  Perhaps Options

1   should have gone with the full-time

2   placement because that's what everybody from

3   Options believe is appropriate.  They're

4   still willing to go to that route.  They

5   want to go to that route because they, in

6   their professional opinion, once they do the

7   self-contained program for LD, many, if not

8   all, of Ashley's somewhat emotional or

9   erratic behavior will probably go away, but

10  it has taken 13 years to get to this point.

11  It's not something that's going to be --

12  it's going to cure overnight.

13          Options did what they were

14  supposed to do.  They were on notice that

15  there were some academic issues.  There were

16  no -- never was there any issue of speech

17  and language, hearing, vision, functional

18  behavior assessment, behavior intervention

19  plan.

20          And the fact is Options placed

21  ████████ in a classroom with a co-teacher, a

22  special education teacher with a regular

1    education teacher, from the first day of

2    classes.  So it wasn't as if she went from

3    no services whatsoever to 24 hours.  She was

4    getting the services because that's what's

5    required under IDEA, is to try interventions

6    before you do the testing and before you

7    write an IAP.  You try certain

8    interventions.  They didn't work.  The

9    special education teacher co-teaching did

10   not work, and they proposed a full-time

11   placement.

12             Mother rejected it.  Father

13   accepted it.  We're willing to go back to

14   the full time.

15             Thank you.

16             MS. TOWNS:  I'd just like to make

17   a correction that at no time did we object

18   to the quality of the psycho-ed.  Otherwise

19   we would have been asking for an independent

20   psycho-ed.  We indicated that we had

21   objections so that we did not object to the

22   psycho-ed., and two is that the record is

1    replete with instances and documentation

2    regarding ▆▆▆▆'s behaviors that would have

3    warranted further inquiry as to whether that

4    was, in fact --

5            MR. HOUSTON:  I object to her

6    bringing into evidence nothing that is in

7    the record.

8            MS. TOWNS:  I'm responding to

9    you.  I'm responding to --

10            HEARING OFFICER BUTLER-TRUESDALE:

11    Okay.

12            MS. TOWNS:  The behavior is on

13    the record.

14            HEARING OFFICER BUTLER-TRUESDALE:

15    You all are done.  You all are done.

16            MS. TOWNS:  Oh.

17            HEARING OFFICER BUTLER-TRUESDALE:

18    Sorry.

19            MR. HOUSTON:  Thank you.

20            HEARING OFFICER BUTLER-TRUESDALE:

21    I think that it's really going to be

22    difficult for me to make a decision in this

 1    matter, given that the only thing that we're

 2    in agreement on is that the current setting

 3    isn't working, and I'll wait for her to come

 4    back in the room, but I'm curious as to the

 5    mother's willingness to put the petitioner

 6    in a full-time special education setting so

 7    that we'll have a better idea of whether or

 8    not additional assessments are warranted.

 9              I think that I don't know how I

10    can make that determination without knowing

11    how she functions in what might be an

12    optimal setting.

13              MS. TOWNS:  Well, representing

14    parent, parent has indicated to me as long

15    as she can feel that there have been

16    comprehensive evaluations and she knows that

17    based on that, it's recommended that she has

18    full time, that she would be in agreement

19    with that.

20              HEARING OFFICER BUTLER-TRUESDALE:

21    So in other words --

22              MS. TOWNS:  That's what she has

 1   represented to me.

 2                HEARING OFFICER BUTLER-TRUESDALE:

 3   So in other words, you want her to be

 4   further evaluated before putting her in a

 5   full-time special education setting?

 6                MS. TOWNS:  Yes.  What the issue

 7   said was --

 8                HEARING OFFICER BUTLER-TRUESDALE:

 9   So what are you going to do in the meantime?

10                MS. TOWNS:  No, but she's already

11   --

12                HEARING OFFICER BUTLER-TRUESDALE:

13   ████ has lost an entire year.

14                MS. TOWNS:  It's not due to the

15   mother.

16                HEARING OFFICER BUTLER-TRUESDALE:

17   I'm not sure.  I don't know, and I don't

18   want to get into that.

19                MS. TOWNS:  Okay.

20                HEARING OFFICER BUTLER-TRUESDALE:

21   Okay?  But the fact is the child has lost an

22   entire year, and let's see.  This is May.

1          MS. TOWNS:  We could do

2     independent evaluations --

3          HEARING OFFICER BUTLER-TRUESDALE:

4     Next is June.

5          MS. TOWNS:  -- as they had

6     suggested.

7          HEARING OFFICER BUTLER-TRUESDALE:

8     Well, the issue with that is though that

9     this case and the findings of fact that I

10    have to make are with whether or not what

11    they did was sufficient.  And then the

12    parent already has an existing statutory

13    right, as I kept trying to prompt you all

14    to, to get another psycho-educational which

15    may or may not suggest further evaluations.

16          I'm not sure why that hasn't been

17    done, which is why I kept saying do you

18    agree or disagree with the psycho-education.

19    That's the pinnacle question right there.

20    That is the pinnacle, strategic, and legal

21    question right there, and that's what puts

22    the ball back in her hands.  That's what

1    gives her another bite at the apple or run

2    for the show.

3                So I don't know that I can make

4    the leap.  It seems like it's a leap to me

5    for further evaluations when we haven't even

6    put her in the alternative setting yet.  I

7    don't know, I mean, because --

8                MS. TOWNS:  No, it's based on the

9    mother's right for comprehensive evaluation

10   should she request it.  It was not --

11               HEARING OFFICER BUTLER-TRUESDALE:

12   You keep going back to that.  You keep going

13   back to that as if you repeat it enough

14   times, it's going to make it the law.

15               MS. TOWNS:  No, no.

16               HEARING OFFICER BUTLER-TRUESDALE:

17   It's not the law.  It's not the law. And you

18   just keep saying it is not going to make it

19   the law.  If I could rewrite it, I'd rewrite

20   it for you.

21               MS. TOWNS:  No, no.

22               HEARING OFFICER BUTLER-TRUESDALE:

1    Because you've said it so many times, but

2    that doesn't make it the law.  It is all

3    areas of suspected disability.  Okay.  So

4    now I'm not sure.  I'll go through the

5    record.  I'll even listen to this again,

6    three hours of this, which means you're not

7    going to get the correction paper that

8    you're looking for me for, you know, because

9    all of these things cost time.  There's a

10   finite amount of time.

11             But in order to make the findings

12   of fact that I think you're asking me to

13   make, I don't know that I heard et in three

14   hours what factors occurred that would have

15   put them on notice that the other

16   evaluations were warranted.  I'm not sure I

17   heard.

18             Maybe when I reread this I'll see

19   it or maybe when I listen to this I'll hear

20   it, but right now I can't point to anything

21   here that says, "Okay.  There it is.

22   There's the nexus right there that would

1    have put Options on notice that more

2    evaluations were required."

3              It has got to be specific.  It

4    can't just be what she feels unfortunately.

5              MS. TOWNS:  Well, I believe it's

6    based on the fact that if she came to them

7    and relied on them, that she warranted for

8    that one instrument, one instrument which we

9    can generally consider the psycho is one

10   instrument, to determine full-time services

11   without the other, and then as a follow-up

12   of that, Mom then specifically asked for

13   evaluations that they specifically declined.

14              HEARING OFFICER BUTLER-TRUESDALE:

15   As specific evaluations that they

16   specifically declined when?

17              MS. TOWNS:  At the resolution

18   meeting.

19              HEARING OFFICER BUTLER-TRUESDALE:

20   Okay, and so you didn't amend the hearing

21   complaint to state that --

22              MS. TOWNS:  No, but it was

1    already in the hearing complaint, as they

2    discussed it.

3             HEARING OFFICER BUTLER-TRUESDALE:

4    Okay.

5             MS. TOWNS:  I mean it's already

6    the number one issue that she wants broader

7    evaluations before they make this decision

8    concerning her child.

9             MR. HOUSTON:  I respectfully

10    disagree that they are asking for that.

11    That was part of the relief.  They made

12    allegations that we didn't do all of the

13    testing that was required under the law, and

14    therefore, they get a panoply of tests, and

15    just because they repeated it again, what

16    that panoply of testing was at the March

17    27th, doesn't make -- it doesn't

18    retroactively make the fact that there was

19    some indication upon Options that she needed

20    to be tested for all of these different

21    areas.

22             And we've already --

1                 HEARING OFFICER BUTLER-TRUESDALE:

2       I don't want to get -- I don't want to

3       expend any time that isn't really, you know,

4       productive or is just repetitive because I

5       don't want to further frustrate her.

6                 MR. HOUSTON:    I agree.

7                 HEARING OFFICER BUTLER-TRUESDALE:

8       But what I do want to make sure that is

9       clear, at least from this Hearing Officer's

10      perspective is that if the school disagreed

11      with the parent, and I know what you are

12      probably trying to do.    I would have hoped

13      that you would just do what I wanted to do,

14      too, but you all should have filed the

15      hearing complaint if you disagree with what

16      she wanted.

17                MR. BUSH:    That's what w were

18      going to do.

19                HEARING OFFICER BUTLER-TRUESDALE:

20      Well, you need to be extremely proactive

21      about that and not just simply adjusting the

22      IAP.

**NEAL R. GROSS**

COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          www.nealrgross.com

1          I think it might be helpful to me

2    to get the father's ending impression of

3    what has happened here.  That might be the

4    most productive use of the remaining ten

5    minutes that I'm going to give you all so

6    that I have an idea of at least what they

7    will talk about as an amenable solution once

8    you leave here because I would really like

9    to please you.  I'd like to put out an order

10   exactly what you want, but you know, I'm not

11   Santa Claus.  I've got to work within the

12   frame of the law.

13          Do you understand what has

14   occurred here?  Were you following --

15          MR. BUSH:  What?

16          HEARING OFFICER BUTLER-TRUESDALE:

17   -- the legal confines of that, the legal

18   question that --

19          MR. BUSH:  Yes.  Well, the

20   picture I get is that the mother is not

21   satisfied with the tests that were conducted

22   the school.  She feels they are not adequate

1    enough to put the child into a self-

2    contained class.  That's what her argument

3    is.  That's the question, I guess.

4                    HEARING OFFICER BUTLER-TRUESDALE:

5    Okay.  Because ultimately is it because a

6    self-contained class is not appropriate for

7    ████?

8                    MR. BUSH:  The mother feels that

9    ████ is stigmatized.  If you stigmatized -

10    -

11                    HEARING OFFICER BUTLER-TRUESDALE:

12    What do you expect the school to do about

13    that?

14                    MR. BUSH:  -- by going to a self-

15    contained classroom.

16                    HEARING OFFICER BUTLER-TRUESDALE:

17    What is it that you expect the school to do

18    about that?  They cannot --

19                    MS. HOWE:  It ain't had nothing

20    to do with that.  It ain't had nothing to do

21    with that.  When I walked in that school,

22    they would have gave me everything that I

1    asked them for when I walked through there.

2    The frustration, every day they call me on

3    the phone.  ▮▮▮▮ acting out.

4              You know ▮▮▮▮ acting out.  You

5    know why she's not learning, because she's

6    showing off in class.  She's not getting her

7    needs met.  I told them that.

8              This test?  No, we've got 100 and

9    something days to test by law.  Okay.  Well,

10   as a parent, I walked through that door in

11   August straight from another school saying I

12   need some help.  They done shut down that

13   school and fired all of these teachers.  I

14   need to get her in school, get her tested,

15   get my daughter where she need to be.

16             HEARING OFFICER BUTLER-TRUESDALE:

17   Okay.

18             MS. HOWE:  Don't wait till six

19   months later till of his.  Just like he just

20   said, we've got to wait another three or

21   four more weeks to test her.  This is crazy.

22             HEARING OFFICER BUTLER-TRUESDALE:

1    Okay.  So what you --

2              MS. HOWE:  This is crazy.

3              HEARING OFFICER BUTLER-TRUESDALE:

4    What I will definitely have in the order is

5    an independent OT since they agree to do the

6    OT and don't have the OT yet.

7              But how is that going to help if

8    she's not in what may be the optimal

9    setting?  Because we know the setting she's

10   in now is not the optimal setting.  So what

11   is it that we're going to create to the end

12   of the year?

13             MS. HOWE:  But they waited till

14   the end of the year to do that.

15             HEARING OFFICER BUTLER-TRUESDALE:

16   I don't even want to go back.  What is it

17   that we can do --

18             MS. HOWE:  Okay.  I want to --

19             HEARING OFFICER BUTLER-TRUESDALE:

20   Let me finish.

21             MS. HOWE:  Okay.

22             HEARING OFFICER BUTLER-TRUESDALE:

1    What is it that can be done to rescue what,

2    the last four weeks of school?

3                    MS. HOWE:   They should have been

4    testing --

5                    HEARING OFFICER BUTLER-TRUESDALE:

6    I'm not going to should have --

7                    MS. HOWE:   Okay.

8                    HEARING OFFICER BUTLER-TRUESDALE:

9        -- could have, would have, could have,

10   should have.

11                   MS. HOWE:   You asked me what she

12   --

13                   HEARING OFFICER BUTLER-TRUESDALE:

14   What is it that we can do to make sure --

15                   MS. HOWE:   Whatever it's going to

16   take to get her put back on her feet because

17   throwing her in that classroom --

18                   HEARING OFFICER BUTLER-TRUESDALE:

19   Well, is it possible that a full-time out of

20   general educational schedule would do that?

21                   MS. HOWE:   Are you talking about

22   being in that contained classroom?

1    HEARING OFFICER BUTLER-TRUESDALE:

2 Yes.

3    MS. HOWE:  No, no.

4    HEARING OFFICER BUTLER-TRUESDALE:

5 Well, I don't know.  What is it that you

6 expect the school to offer?

7    MS. HOWE:  Well, they should have

8 offer the things that she should be tested.

9 Okay.  Even if they put her in there, I

10 think it's a little too late for her in four

11 weeks to gather up all this information in

12 four weeks to be able for her to pass.

13    HEARING OFFICER BUTLER-TRUESDALE:

14 I'm not asking her to do four weeks in a

15 year.  I'm saying how can we most

16 constructively use the last four weeks of

17 school.

18    MS. HOWE:  I need to talk to her.

19 I need to get some counseling in that are.

20    HEARING OFFICER BUTLER-TRUESDALE:

21 Okay.  If you got A or B and A is not

22 working and you don't want B, what do you

1    expect for me to choose for you?

2              MS. HOWE:  Okay.  Well, I'm not

3    going to say B working either.  Okay.  Even

4    if they did snatch her and put her back all

5    in that school, okay, say, for instance, if

6    I agreed with that and we break back to

7    square one, what I supposed to do?  What I

8    supposed to do?

9              HEARING OFFICER BUTLER-TRUESDALE:

10   Well, at least you would have tried

11   something in the meantime.

12             MS. HOWE:  Okay, but the --

13             HEARING OFFICER BUTLER-TRUESDALE:

14   Instead of sitting, letting her vegetate in

15   a program with an IP that you know isn't

16   working that was merely offered to attempt

17   to please you.

18             MS. HOWE:  It wasn't attempt to

19   please me.  Nothing wouldn't --

20             HEARING OFFICER BUTLER-TRUESDALE:

21   The reduction of the hours is not?

22             MS. HOWE:  The hours is attempt

1   to help my child.  It's nothing about

2   pleasing me.

3               HEARING OFFICER BUTLER-TRUESDALE:

4   No.  They have stated that they made a

5   professional --

6               MS. HOWE:  My daughter --

7               HEARING OFFICER BUTLER-TRUESDALE:

8       -- blunder.

9               MS. HOWE:  -- came to me.  My

10   daughter --

11               HEARING OFFICER BUTLER-TRUESDALE:

12   They have stated that they have compromised

13   their professional integrity and did what

14   they thought you wanted as opposed to --

15               MS. HOWE:  It's not what I

16   wanted.  What ████y wanted.  ████ came to

17   me.

18               HEARING OFFICER BUTLER-TRUESDALE:

19   What ████ wants?  A████ is a child.

20               MS. HOWE:  Okay, but ████ was

21   in the classroom even though she's a child.

22               HEARING OFFICER BUTLER-TRUESDALE:

1    Let me tell you something.

2                    MS. HOWE:  Okay.

3                    HEARING OFFICER BUTLER-TRUESDALE:

4    Every day --

5                    MS. HOWE:  Let me get up and get

6    some counseling for her because --

7                    HEARING OFFICER BUTLER-TRUESDALE:

8    Okay.  Do you know what?

9                    MS. HOWE:  -- nobody knows the

10    frustration --

11                    HEARING OFFICER BUTLER-TRUESDALE:

12    This is the same thing that you're going to

13    go down that happened yesterday.  You've got

14    to get your clients ready for this process.

15                    MS. HOWE:  I'm going out here so

16    I can talk to her.

17                    HEARING OFFICER BUTLER-TRUESDALE:

18    And I understand it's frustrating.  I want

19    you to know, Ms. Howe --

20                    MS. TOWNS:  She's got to end it.

21                    HEARING OFFICER BUTLER-TRUESDALE:

22    I don't talk to people standing up.

1           I know that it's difficult.  I

2    have been very patient.  I've gone beyond

3    what my contract requires me to do because

4    I, too, am a mother, and I'm really tired of

5    giving this speech to parents who come in

6    here and won't help me help their children.

7           If there's a choice between two

8    alternatives, I know that you've been

9    through hell from August 1st.  I heard the

10   chronology of events that you gave to me,

11   but you're leaving me, walking out, standing

12   up getting ready to walk out of the door

13   without me having an idea --

14           MS. HOWE:  -- talk to her.

15           HEARING OFFICER BUTLER-TRUESDALE:

16   -- of what alternative it is that you're

17   imagining that I can order.

18           MS. HOWE:  That's why I want to

19   talk to my lawyer, to get some counseling

20   from her.

21           HEARING OFFICER BUTLER-TRUESDALE:

22   It's now 12:25.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

 1               MS. HOWE:  Okay, but I want to --

 2               HEARING OFFICER BUTLER-TRUESDALE:

 3      This should have been done two or three days

 4      before this hearing.

 5               MS. HOWE:  Well, they shouldn't

 6      have even haven't never even came to the

 7      table because I never seen somebody have to

 8      come through a school system just to get for

 9      someone to help your child.  Unbelievable,

10      unbelievable.

11               HEARING OFFICER BUTLER-TRUESDALE:

12      Agreed.

13               MS. HOWE:  Now, if you say if I

14      decide to go with she be in a full contained

15      class, I lose my case.  My daughter, we

16      won't have no winner.  We can't come back to

17      you and beg you please help me with my

18      child.

19               HEARING OFFICER BUTLER-TRUESDALE:

20      Who told you that?

21               MS. HOWE:  Well, I don't know.

22      I'm just trying to find out.  We could put

1    her back in there, but suppose we fail.  I

2    mean, either way, we can do it.  We don't

3    have no option because I don't know if you

4    won't agree with me.  We put her in there

5    and she fail.  What I supposed to do as a

6    parent?

7                    HEARING OFFICER BUTLER-TRUESDALE:

8    There's not much change that's going to be

9    made in this marking advisory in the four

10   weeks from her now going back to the self-

11   contained classroom.  What I'm really trying

12   to figure out is if you decide to have her

13   remain at Options for '06-'07 school year,

14   what is it that they can do that will serve

15   Ashley and also give you some peace of mind

16   and comfort?

17                    MS. HOWE:  Well, I'm already

18   finding out Options is not the kind of

19   school for my child because if it was, I

20   would have got it when I came to school.

21                    HEARING OFFICER BUTLER-TRUESDALE:

22   Okay.  So am I dealing only with what's

 1    going to happen the next four weeks and how

 2    she should be prepared to enter another

 3    school?

 4              MS. HOWE:   I haven't found a

 5    school yet.   I haven't even.   I'm trying.   I

 6    wish I could find that miracle school to

 7    take her out of these crappy schools that

 8    she's in because, like I said, if it was my

 9    way I would have here in another public

10    school where, just like I said, she was from

11    what I was telling, "Come on in.   Take your

12    -- take the parent's money, taxpayer's

13    money.   We're going to put her in a special

14    ed. class."

15              I ain't ever heard of self-

16    contained class until afterwards I done

17    battled with them about her being tested and

18    then he (unintelligible) with her, and then

19    all of a sudden let's put her in one class

20    with the rest of these students.

21              My daughter, see, I'm speaking on

22    my daughter's behalf, but it ain't about me.

1    It's about my daughter's learning.

2              HEARING OFFICER BUTLER-TRUESDALE:

3    Have you been in the class that they were

4    suggesting for her?

5              MS. HOWE:  Have I been in there?

6              HEARING OFFICER BUTLER-TRUESDALE:

7    The self-contained class.

8              MS. HOWE:  Yeah, I went in there

9    and met with Mr. Leonard.  He's a very nice

10   teacher in a small room like this with 19

11   students.  You'd be frustrated all day, too,

12   being stuck up in that classroom.

13             HEARING OFFICER BUTLER-TRUESDALE:

14   Okay.  So you found that --

15             MS. HOWE:  He don't have --

16             HEARING OFFICER BUTLER-TRUESDALE:

17   -- after visiting that classroom, the

18   suggested classroom, that the classroom that

19   she would have been in was inappropriate?

20             MS. HOWE:  It's not at -- okay.

21   As far as the setting, as far as like the

22   smallness of it, when a child used to bounce

1   from class to class and you put a child that

2   all her life been going from class to class,

3   now she closed in.

4              HEARING OFFICER BUTLER-TRUESDALE:

5   Okay.  Now, don't get mad at me.

6              MS. HOWE:  I'm not going to get

7   mad at you.

8              HEARING OFFICER BUTLER-TRUESDALE:

9   Are you underestimating ████'s ability to

10  adapt?

11             MS. HOWE:  No, it ain't got

12  nothing to do with adapting.

13             HEARING OFFICER BUTLER-TRUESDALE:

14  I mean, it may not be perfect, but --

15             MS. HOWE:  It's about --

16             HEARING OFFICER BUTLER-TRUESDALE:

17  I want you to answer.  You can say -- I'll

18  give you the opportunity to --

19             MS. HOWE:  Okay.

20             HEARING OFFICER BUTLER-TRUESDALE:

21     -- say whatever in the hell you want to

22  say on the record --

1            MS. HOWE:  No, it ain't got

2     nothing to say about adapting.

3            HEARING OFFICER BUTLER-TRUESDALE:

4       -- but when I ask you a question, can you

5     at least just answer the question I ask and

6     then rant on with all of the other stuff?

7            MS. HOWE:  Go ahead.  Go ahead.

8            HEARING OFFICER BUTLER-TRUESDALE:

9     Are you underestimating ████████'s ability to

10    adapt to that smaller classroom?

11           MS. HOWE:  No, because it's not a

12    smaller classroom.

13           HEARING OFFICER BUTLER-TRUESDALE:

14    You just told me that it's too small, too

15    many people in there.

16           MS. HOWE:  No.  It's a small

17    classroom with 19 students.

18           HEARING OFFICER BUTLER-TRUESDALE:

19    Okay.

20           MS. HOWE:  If they were like I

21    said, the special ed., if they're going to

22    put your child in a special ed. environment

```
 1        for something like maybe she might need a

 2        lesser, like ten to 12 students in the

 3        class.  I mean, you've got one teacher, one

 4        teacher and another teacher come in with

 5        like 19 kids in a small classroom.  Come on.

 6        It ain't about adapting.  It's about

 7        learning.  Who's going to learn in a box

 8        like this?  Who going to learn all day long

 9        in one class?

10                  HEARING OFFICER BUTLER-TRUESDALE:

11        That's your opinion, but do you know that to

12        be a reality that she would not be able to

13        learn in that environment?

14                  MS. HOWE:  I'm not going to say

15        she might thought be learning, but she's

16        been going. She's been going.

17                  HEARING OFFICER BUTLER-TRUESDALE:

18        But this is she's now on the schedule where

19        she's in different classes at different

20        times.  She's not in the full time out of

21        general education class originally

22        recommended, right?  Is that the case?
```

1            MS. HOWE:  Yeah, she's in there

2      half the day, and then the rest of it is the

3      regular upper classes.

4            HEARING OFFICER BUTLER-TRUESDALE:

5      Okay.  Okay.

6            MS. HOWE:  And then she's got to

7      go to summer school.  They ain't tell you

8      she's staying back.  They ain't tell you

9      that.  She's got to go to summer school.

10     She's staying back.

11           HEARING OFFICER BUTLER-TRUESDALE:

12     Okay.  I'll do what I promised you I will

13     do.  I will re-listen to -- glean through

14     this for what I think is not there, but I'll

15     go through it.  You know, I simply don't

16     want to keep you any longer.  I know both of

17     you have to go to work, and they need to be

18     on their jobs.

19           MS. HOWE:  Yeah.

20           HEARING OFFICER BUTLER-TRUESDALE:

21     I wish I could -- I like to be able to give

22     you a resolution at the table, you know, so

1   that you know what the order is going to

2   say.  That's my preference.

3            MS. HOWE:  It's okay.

4            HEARING OFFICER BUTLER-TRUESDALE:

5   And I'm not able to do that because I don't

6   know what to do with this.

7            MS. HOWE:  We're way down.  All I

8   can say we could put ourselves in a

9   contained class, but summer school coming

10  around.  September coming back around.  It's

11  a whole -- all her other kids done passed

12  on.  I don't know where her emotions are

13  going to be for next year.

14           HEARING OFFICER BUTLER-TRUESDALE:

15  The order that I made is not an order where

16  I can order you to put her in a self-

17  contained class.  That's something you'll

18  have to arrange with them.  The order that I

19  will put out will be a ruling on whether or

20  not they should have tested her in other

21  areas.

22           MS. HOWE:  Yes, she's very

 1   emotional.  They ain't tested her on that.

 2   Ask about her emotions and stuff.

 3               HEARING OFFICER BUTLER-TRUESDALE:

 4   Do you understand that she may be as

 5   emotional as she wants to be, but if it does

 6   not impact her ability to perform in the

 7   class, that they don't have to service her

 8   in that area or evaluate her in that area?

 9   Which is one of the reasons that you want to

10   get her into the setting that they're

11   suggesting so that if she then still doesn't

12   perform, you have a stronger rationale for

13   getting more text.

14               MS. HOWE:  It won't make any

15   difference if they put her in it, but I'm

16   not satisfied with old, chronic classroom --

17               HEARING OFFICER BUTLER-TRUESDALE:

18   But you say it doesn't make any difference

19   whether or not they put her in there.  It's

20   not giving them --

21               MS. HOWE:  I ain't got no choice.

22               HEARING OFFICER BUTLER-TRUESDALE:

1    permission to do it.

2         MS. HOWE:  Because she's going to

3    fail if she do go back to them class.  They

4    already planned it, with your all's so-

5    called team, didn't come in the meeting

6    saying that Ashley is not learning and you

7    all so-called special ed.  It's -- huh.  Do

8    what you all got to do.  It don't make me no

9    difference because I'm going to fight it if

10   it takes tooth and nails for my daughter to

11   get the appropriate thing that she need,

12   even if it's not in your school.  I'm going

13   to go through tooth and nails.

14        HEARING OFFICER BUTLER-TRUESDALE:

15   Okay.  Well, I hope that you're listening

16   because I've given you several clues in the

17   last five minutes as to the path to that.

18        MS. HOWE:  Well, she can go back

19   to the self-contained classes.

20        HEARING OFFICER BUTLER-TRUESDALE:

21   There's a path to it.  It's a path to it,

22   and you just keep bumping your head up

1    against the wall, you know, like I'm going

2    to fight, I'm going to fight, I'm going to

3    fight.  All you end up with is a bloody

4    head.  There's a path to what I think you're

5    trying to do; I don't have that before me

6    today.

7              MS. HOWE:  All I want my daughter

8    to get, what I pay my taxes for, to get

9    tested, and then you can go back and throw

10   her in special ed.  Test the child.  Then

11   put her back in there.  That's what the law

12   is supposed to state, but, no, you all are

13   going to fight over a couple hundred dollars

14   that I get out here and work every day and

15   pay for, for my child to get tested.

16              I can't even believe, I can even

17   believe this even exists.  I'm embarrassed

18   with you all school system.  I'm very

19   embarrassed.

20              HEARING OFFICER BUTLER-TRUESDALE:

21   I am an independent hearing officer.  So who

22   are you talking to?

 1            MS. HOWE:  I'm embarrassed.

 2            HEARING OFFICER BUTLER-TRUESDALE:

 3    Are you talking to him?

 4            MS. HOWE:  I'm embarrassed with

 5    the school system itself.

 6            HEARING OFFICER BUTLER-TRUESDALE:

 7    Are you talk to him?  Are you talking to

 8    them?

 9            MS. HOWE:  Excuse me.  Excuse me.

10    Excuse me.

11            MS. HOWE:  -- for my child, who

12    else is in --

13            HEARING OFFICER BUTLER-TRUESDALE:

14    Direct your comments to whom you're speaking

15    to.

16            MS. HOWE:  I'm embarrassed with

17    the school system.  I'm embarrassed if you

18    turn me down from getting my child some

19    help.

20            HEARING OFFICER BUTLER-TRUESDALE:

21    Well, I am an independent --

22            MS. HOWE:  Regardless.

```
 1                    HEARING OFFICER BUTLER-TRUESDALE:

 2       I am an independent hearing officer.  I am

 3       not a part of the school system, and I have

 4       several stakeholders that I have to protect:

 5       your child, the taxpayers, the --

 6                    MS. HOWE:  I'm a taxpayer.  I'm a

 7       taxpayer and I --

 8                    HEARING OFFICER BUTLER-TRUESDALE:

 9       You are one of 600,000 taxpayers in the

10       District of Columbia.  I'm not going to go

11       toe to toe for you because it doesn't help.

12       I'm not going to sway you one way or the

13       other.  I have done my best to be as helpful

14       to you as possible in letting you know where

15       the gaps are so that you and the father of

16       your child can sit down and then talk as

17       much as you can, come to a resolution about

18       what you jointly for the child, and then

19       impart that information to your counsel --

20                    MS. HOWE:  He was --

21                    HEARING OFFICER BUTLER-TRUESDALE:

22            -- and then impart it to the school
```

 1    because the order that I'm going to make one

 2    way or the other is not going to resolve all

 3    of ███'s problems, and that's why I'm

 4    spending this time here with you.  Because

 5    no matter what I decide in the order, ███

 6    still leaves this room with a huge problem.

 7    You both agree that the setting is still

 8    inappropriate, and there's nothing in this

 9    order or on the complaint that gives me the

10    parameters to change her setting.

11              MR. HOUSTON:  One thing, Madam

12    Hearing Officer.  Just as a clarification.

13              HEARING OFFICER BUTLER-TRUESDALE:

14    Let the record reflect the mother is leaving

15    the room.

16              MS. HOWE:  I'm leaving the room

17    because I can't stand him talking.  He gets

18    on my nerves, and I don't like his attitude.

19    I don't care if he's taking us to school.

20    Like I said, I'm entitled to my daughter

21    being tested.  You all are a disgrace.  You

22    all are a disgrace.

1           MR. HOUSTON:  You had said that

2      you were going to order the independent

3      testing.  The parents asked for us to do it

4      for --

5           HEARING OFFICER BUTLER-TRUESDALE:

6      And for OT.

7           MR. HOUSTON:  Yes, ma'am.  The

8      parents asked for us to do it first within

9      30 calendar days, and if we don't do it

10     within 30 calendar days --

11          HEARING OFFICER BUTLER-TRUESDALE:

12     Thirty calendar days of what, the resolution

13     meeting?

14          MR. HOUSTON:  No, of the date of

15     the Hearing Officer's decision.  That's the

16     second.

17          HEARING OFFICER BUTLER-TRUESDALE:

18     Oh, that's her stated release?

19          MR. HOUSTON:  Yes, ma'am.

20          PARTICIPANT:  We'll have it done.

21          MR. HOUSTON:  We'll have it done

22     before that.

1           Thank you.

2           HEARING OFFICER BUTLER-TRUESDALE:

3   I want to say that I am extremely concerned.

4   Really, I mean, because like I said whatever

5   I put out is not going to meet all of the --

6   it's not -- I would like -- the only thing

7   that makes it worth, again -- I'll say it

8   again -- not eating, being late on my

9   orders, that I get fined $300 for.  Okay?

10  Three hundred dollars are coming out of my

11  pocket because I should be back there

12  writing decisions.  Okay? -- is that I at

13  least feel like there's some temporary

14  resolution to the child's situation.

15          I don't see that here.  Really

16  I'm not certain that I did not waste my time

17  because the real issue is here that you

18  don't agree about the setting, and the

19  evaluations are secondary.

20          But the year is lost.  The child

21  is in an inappropriate setting.  A cause of

22  action is probably -- and there are steps to

233

1    get to a cause of action.  There are certain

2    steps to get to it.

3           So I will do everything that I

4    can to have made this almost four hours

5    productive, but the case is framed by

6    certain parameters, and I have to act within

7    those parameters.

8           Okay.

9           (Whereupon, at 12:35 p.m., the

10    above-entitled matter was concluded.)

11

12

13

14

15

16

17

18

19

20

21

**NEAL R. GROSS**

COURT REPORTERS AND TRANSCRIBERS

1323 RHODE ISLAND AVE., N.W.

(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com