**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

OPTIONS PUBLIC CHARTER SCHOOL

      Plaintiffs


      v.                                   Civil Action No.**1:06:CV01004** (PLF)


CAMILLE HOWE, *et al.,*

      Defendants.

---

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

Defendants file this Memorandum in support of their Motion for Summary Judgment, pursuant to ***LCvR 56.1*** and ***LCvR 7.1 (a)***.  Under ***Federal Rule of Civil Procedure 56 (c)***, a party is entitled to summary judgment if there is no genuine issue of material fact and "the moving party is entitled to judgment as a matter of law."  ***See Celotex v. Catrett, 477 U.S. 317, 323 (1986)***.  Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment.  ***See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).***  To be genuine, the issue must be supported by evidence sufficiently admissible that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation.  ***See Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).***

<u>**OUTLINE:**</u>

I.       **TABLE OF CASES AND AUTHORITIES……………………………………p. 3**

II.      **INSOFAR AS THE PARTIES AGREED THAT AN
OCCUPATIONAL THERAPY EVALUATION WOULD
BE PERFORMED AND PLAINTIFFS FAILED TO
EXECUTE THIS EVALUATION, THE HEARING
OFFICER ORDERED PLAINTIFFS TO COMPLY
WITH THE AGREEMENT……………………………………………………p. 4**

III.     **IN VIEW OF THE FACT THAT A REGULAR CLASS-
ROOM TEACHER WAS NOT IN ATTENDANCE AT
THE 1/12/05 MDT MEETING OR THE 1/26/06 IEP
MEETING, DEFENDANTS VIOLATED *34 CFR
§ 300.344 (a) (2)*.  THUS, THE HEARING OFFICER
CORRECTLY ORDERED AN MDT/IEP MEETING………………...…p. 6**

IV.     **THE HEARING OFFICER'S ORDER TO COMPEL
PLAINTIFFS TO PROVIDE SPEECH & LANGUAGE
EVALUATION, CLINICAL EVALUATION, SOCIAL
HISTORY AND VISION & SCREENING IS JUSTIFIED………………p. 9**

V.      **THE HEARING OFFICER'S DECISION IS BASED
ON SPECIAL EDUCATIONAL UNDERSTANDING
AND POLICY, AND A FEDERAL DISTRICT
COURT CAN NOT SUBSTITUTE ITS NOTION OF
SOUND SPECIAL EDUCATION POLICY FOR
THOSE OF THE AUTHORITIES WHICH THEY
REVIEW.  *HENDRICK HUDSON DISTRICT BOARD
OF EDUCATION V. ROWLEY, 458 U.S. 176, 206 (1982)*……..................p. 12**

VI.     **PLAINTIFF-CHARTER SCHOOL BEARS THE
BURDEN OF PROOF AS THE PARTY CHALLENGING
THE OUTCOME OF THE ADMINISTRATIVE HEARING……....….p. 13**

### (I)  TABLE OF CASES AND AUTHORITIES

*34 CFR § 300.344 (a) (2).

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

*Angevine v. Smith, 292 U.S. App. D.C. 346, 959 F.2d 292, 295 (1992).

*Board of Education of Arlington Heights School District No 25 v. Illinois State Board of Education, 2001 U.S. Dist. LEXIS 6994, * 11-12 (N.D. Ill. March 19, 2001).

Celotex Corp. v. Cartett, 477 U.S. 317, 323 (1986).

*Heather S. By Kathy S. v. State of Wisconsin, 125 F.3d 1045, 1054 (7th Cir. 1997).

*Hendrick Hudson District Board of Education v. Rowley, 458 U.S. 176, 206 (1982).

*Karl v. Board of Education of Geneseo Central School District, 736 F.2d 873, 877 (2nd Cir. 1984).

*Kerkam v. McKenzie, 274 U.S. App. D.C. 139, 862 F.2d 884, 887 (1988).

Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

*Lyons v. Smith, 829 F. Supp. 414, 417 (D.D.C. 1993)

*New York City Department of Education-New York State Educational Agency, 45 IDELR 236 (November 16, 2006) at p. 1034.

**(II)  INSOFAR AS THE PARTIES AGREED THAT AN OCCUPATIONAL THERAPY EVALUATION WOULD BE PERFORMED AND PLAINTIFFS FAILED TO EXECUTE THIS EVALUATION, THE HEARING OFFICER ORDERED PLAINTIFFS TO COMPLY WITH THE AGREEMENT.**

The administrative record is clear that the parties agreed that an occupational therapy (OT) evaluation would be performed on the minor.  Plaintiffs failed to perform the OT evaluation, therefore the Hearing Officer ordered an OT evaluation for the minor. Based upon the testimony and admissions in the record, the Hearing Officer stated the following:

> HEARING OFFICER BUTLER-TRUESDALE:
> What I will definitely have in the order is an independent OT since they agree  to do the OT and don't have the OT yet.  *See transcript at p. 209, lines 3-6.*

On what evidence does the Hearing Officer base her finding that the parties agreed to an OT evaluation, and it was not performed?  During the cross examination of "fact witness", Ms. Higgingbotham, the Hearing Officer accepted her testimony as credible that Plaintiffs agreed to perform an OT evaluation.  On the issue of Plaintiffs' agreement to perform the OT evaluation, "fact witness" Ms. Higgingbotham testified:

> THE WITNESS:  So we discussed - - we reviewed the visual-motor integration scores and my question to Dr. Cranford was when a student is functioning four grade levels below where they currently are, if the test results show they are functioning four grades below, would that warrant an occupational therapy evaluation, and he basically just said we can do an occupational therapy evaluation.  *See transcript at p. 185, lines 13-22.*

Next, the Hearing Officer found the testimony of Ms. Howe credible relative to the agreement of the parties to perform an OT evaluation on the minor.  Under cross examination Ms. Howe stated the following:

Q    But they did agree to the OT thought.

A    Yes.

   MR. HOUSTON:  Okay.  That's all I have.
*See  transcript at p. 189, lines 2-6.*

The Hearing Officer's Decision to compel Plaintiffs to conduct an OT evaluation*,*

was pursuant to an agreement of the parties and based on credible evidence from the

record. *See Hearing Officer's Decision at p.4.*

Although Plaintiffs assert that the Hearing Officer erred by awarding the minor an

OT evaluation, the crux of their argument is that they do not agree with the Hearing

Officer.  On the question of the OT evaluation, the Hearing Officer found credible

evidence that the parties agreed to perform an OT evaluation. Plaintiffs argue that

because the Hearing Officer considered their witness Dr. Cranford credible *(See*

*Complaint at p 4., ¶ 21)*, in turn the Hearing Officer is prohibited from exercising

independent judgment based on the totality of the evidence before her, and special

education comprehension, to rule in favor of Defendants and award an OT evaluation.

Essentially, Plaintiffs are now requesting this Court to substitute its ideas of special

education concerning an OT evaluation for those of a Hearing Officer who based her

decision on the evidence and credibility of the witnesses.

Federal Courts can not substitute their notions of special education policy for those

of the school authorities which they review.  *Hendrick Hudson District Board of*

*Education v. Rowley 458 U.S. 176, 206 (1982).*  The Hearing Officer's Decision to order

Plaintiffs to provide the minor an OT evaluation is based on evidence in the record and

sound reasoning.  Moreover, there is a presumption of expertise in a Hearing Officer,

"essentially this means we should not reverse the hearing officer's findings simply

because we disagree with them." ***Board of Education of Arlington Heights School***

***District. No 25 v. Illinois State Board of Education, 2001 U.S. Dist. LEXIS 6994, * 11-***

***12 (N.D. Ill. March 19, 2001).***  The Hearing Officer's decision to order an OT evaluation

is reasonable and based on the evidence in the record.

**(III)  IN VIEW OF THE FACT THAT A REGULAR CLASS-
ROOM TEACHER WAS NOT IN ATTENDANCE AT
THE 1/12/05 MDT MEETING OR THE 1/26/06 IEP
MEETING, PLAINTIFFS VIOLATED *34 CFR
§ 300.344 (a) (2)*.  THUS, THE HEARING OFFICER
CORRECTLY ORDERED AN MDT/IEP MEETING.**

The 1/12/05 MDT meeting did not have a regular education teacher present, and

there is **no** signature of such a teacher in attendance.  ***See EXHIBIT # 1.***  Next, the

1/26/06 IEP meeting did not have a regular education teacher present, and there is **no**

signature of such a teacher in attendance.  ***See EXHIBIT # 2.***  Thus, the Hearing Officer

correctly ordered an MDT meeting for execution of a new IEP.  ***See Hearing Officer's***

***Decision at p. 4.***

The plain meaning of ***34 CFR § 300.344 (a) (2)*** requires a regular education teacher

present at the IEP.  This law provides the following:

> **§ 300.344   IEP team.**
>    (a)  *General*.  The public agency shall ensure that the IEP team
> for each child with a disability includes –
>
>    (2) At least one regular education teacher of the child (if the
> child is, or may be, participating in the regular education
> environment);

First, the Hearing Officer may take judicial notice of the official 1/12/05 MDT

attendance signature page and the 1/26/06 IEP attendance signature page, and find that **no**

regular education teacher was present at either of these meetings.  Second, the Hearing

6

Officer may weigh the testimony of the witnesses on this issue.  On the issue of whether a

regular education teacher was present, clearly the Hearing Officer found the testimony of

Ms. Howe credible.  On this issue, Ms. Howe testified to the following:

> Q       At that meeting, the team decided that Ashley needed a
> self-contained program. Did you at that time say, "No, that's
> not right for Ashley"?
>
> A       Yes.
>
> Q       Okay.
>
> A       What team?  It wasn't nothing but him and him.
>
> Q       Okay
>
> A       Are you talking about the team of teachers and all of that?
> It wasn't none of them in there.  ***See transcript at p. 114, lines
> 3-14.***

In ***New York City Department of Education-New York State Educational Agency,***

***45 IDELR 236 (November 16, 2006)*** that court held:

> By failing to include a teacher who could contribute information
> to the parent about the team's proposed placement in a self-
> contained classroom, the district deprived the student and her
> parent the perspective and input of the individual who would be
> addressing the student's needs during the year. ***Id. at p. 1034.***

In the case at bar, Plaintiffs proposed to transfer the minor to a "self-contained

classroom" and failed to include a teacher who could contribute information to the parent

about the team's proposed placement.  Therefore, Plaintiffs deprived Defendants the

perspective and input of the necessary and indispensable teacher.  ***See New York City***

***Department of Education-New York State Educational Agency, 45 IDELR 236***

***(November 16, 2006) at p. 1034.***

The objective business records of participants at the two meeting, substantiates the

testimony of Ms. Howe.  *See EXHIBITS # 1 & 2.*  Therefore, the Hearing Officer found

Ms. Howe's testimony credible on this issue.

    The testimony of Plaintiffs' witness Mr. Adon admitted that **no** regular education

teacher officially signed the 1/12/05 MDT attendance signature page or the 1/26/06 IEP

attendance signature page.  Plaintiffs' witness Mr. Adon tries to satisfy the requirements

of *34 CFR § 300.344 (a) (2)* by saying that a regular education teacher named Ms. Griser

was available by phone.  Next, Plaintiffs' witness Mr. Adon tries to mislead the Hearing

Officer further by saying that regular education teachers were in and out of the meeting

but did not sign attendance sheet out of frustration.

> Q    Any of her regular education teachers were there in terms
> of being involved in the decision regarding the disability code or
> the services needed?
>
> A    Yes.  They didn't sign because they were frustrated.  So
> they left the meeting.  They were in and out.  Ms. Griser was
> available by phone.  Mr. Leonard was there, and Mr. Samuels
> was there, but they were frustrated because the meeting had
> went on so long that they decided to leave.
>
> Q    So that neither of them signed the –
>
> A    That is correct.
>
> Q    --IEP nor meeting notes.
>
> A    That's correct.  *See transcript at p. 48, lines 4-19.*

    The fact that Plaintiffs' regular education teacher Ms. Giser was available by

telephone, but **not** present, does not satisfy the legal requirements of *34 CFR § 300.344*

*(a) (2)*.  Moreover, the testimony of Plaintiffs' witness Mr. Adon that regular education

teachers were present and did not sign in as participants and left out of frustration is

questionable.  The Hearing Officer can and did reject Mr. Adon's testimony on this

factual issue.  The Hearing Officer can reasonably conclude that a regular education

teacher was not present at the MDT and IEP meetings because of the lack of signatures,

and the veracity of the testimony of Plaintiffs' witness Mr. Adon.  Therefore, the Hearing

Officer's order to hold a MDT/IEP meeting is reasonable and based on the evidence in

the record.

### (IV)  THE HEARING OFFICER'S ORDER TO COMPEL PLAINTIFFS TO PROVIDE SPEECH & LANGUAGE EVALUATION, CLINICAL EVALUATION, SOCIAL HISTORY AND VISION & SCREENING IS JUSTIFIED.

The Hearing Officer ordered Plaintiffs to provide the minor a speech & language

evaluation, clinical evaluation, social history and vision & screening.  *See Hearing*

*Officer's Decision at p. 4.*  This finding of the Hearing Officer is based on the evidence

in the record.  The Hearing Officer found the testimony of "fact witness" Ms. Howe

credible relative to the Defendants' request for additional evaluations made upon

Plaintiffs, and the reasons provided.  The witness Ms. Howe was transparent, credible,

simple and honest.  The testimony of Ms. Howe shows an uneducated mother with

learning disabilities.  On direct examination from the Hearing Officer, Ms. Howe

testified:

> HEARING OFFICER BUTLER –TRUESDALE:
> Okay.  Now, let me just give you an idea of what the social histories that I've read, what they typically are for, and then you can tell me whether or not you feel that a social history would have been appropriate.  Okay?
>
> Most of the social histories that I read are reports of any medications that the child has been taking, any psychiatric counseling outside of school that the child would have had, any almost like a chronology of the child's family environment.  In other words, it's usually a report to me of any emotional things that are going on in the home that might be triggering or overflowing in the classroom.

How was Ashley doing at home?

THE WITNESS:  The same thing she did at school.

HEARING OFFICER BUTLER-TRUESDALE:
Which is?

THE WITNESS:  Acting out, frustrated, like almost always I say like argumenting (phonetic) with them like she do at school.

HEARING OFFICER BUTLER-TRUESDALE:
So she's argumentative?

THE WITNESS:  Yes, yes.

HEARING OFFICER BUTLER-TRUESDALE:
And you assume that that's also going on in the classroom environment for what reason?  Because you're getting the reports of her - -

THE WITNESS:  Yeah.

HEARING OFFICER BUTLER-TRUESDALE:
-    - acting out?

THE WITNESS: Yea, yeah, yes, all the time, every day.  Just this week Ashley is not in her classroom.

HEARING OFFICER BUTLER-TRUESDALE:
So now just because she's not in the classroom, how is that tied to her being argumentative at home?

THE WITNESS:  It's just the same way.  She'll come in and like, "Mom" - - frustrated with school, and she'll come in, "Well, I do my work and they just always tell Mom I'm not doing this and doing that in school,"  the teachers saying that she's not doing right or they're going to put her out of school, all this. The teachers consider - - *See transcript at pp. 130 – 133.*

The Hearing Officer is employing her skills in special education to get an

understanding of Ms. Howe's observations of her child's needs, and interactions with

Plaintiffs regarding her child's school behaviors.  Next, the Hearing Officer can note Dr.

Cranford's conclusion that the child has Attention Deficit/Hyperactivity Disorder

10

(ADHD) and Oppositional Defiant Disorder.  *See EXHIBIT # 3 at p. 8.*  The Hearing

Officer can reasonably conclude that based on the mother's transparent and credible

testimony, coupled with the professional finding of ADHD and Oppositional Defiant

Disorder, there is justifiable reason to order the various evaluations.  The Hearing Officer

is trained in the area of special education, and can evaluate special education evidence.

As such the Hearing Officer was not bound to accept Dr. Cranford's opinion the child did

not require assistance for "disruptive behavior disorder."  *See EXHIBIT # 3 at p. 8.*  The

Hearing Officer is not bound to accept Dr. Cranford's opinion that the child did not

require more evaluations.  *See  transcript at p. 57, lines 12-16.*

Next, the Hearing Officer conducts an examination of the biological father

regarding the child's need for glasses.

HEARING OFFICER BUTLER-TRUESDALE:
Has she ever worn glasses?

MR. BUSH:  Well, they might have gave her some reading
glasses for a while.  *See transcript at p. 130, lines 7-10.*

Although there was conflicting testimony as to the need of glasses for the child, the

Hearing Officer can reasonably order vision and hearing screening based on the

acceptance of the father's above testimony alone.

**(V) THE HEARING OFFICER'S DECISION IS BASED ON SPECIAL EDUCATIONAL UNDERSTANDING AND POLICY, AND A FEDERAL DISTRICT COURT CAN NOT SUBSTITUTE ITS NOTION OF SOUND SPECIAL EDUCATION POLICY FOR THOSE OF THE AUTHORITIES WHICH THEY REVIEW.** *HENDRICK HUDSON DISTRICT BOARD OF EDUCATION V. ROWLEY, 458 U.S. 176, 206 (1982).*

In the case at bar, the Hearing Officer's ruling is not illegal in violation of

***Hendrick Hudson District Board of Education v. Rowley, 458 U.S. 176, 206 (1982)***, but

Plaintiffs essentially argue the decision is wrong because they do not like it. Plaintiffs

seek to have this Court substitute its judgment on special education policy for that of the

Hearing Officer. However, Federal Judges are not trained as special education Hearing

Officers. Moreover Congress never intended Federal Judges to act as special education

reviewers. ***Karl v. Board of Education of Genesco Central School District, 736 F.2d***

***873, 877 (2nd Cir. 1984)***. There is a presumption of expertise in a Hearing Officer,

"essentially this means we should not reverse the hearing officer's findings simply

because we disagree with them." ***Board of Education of Arlington Heights School***

***District No. 25 v. Illinois State Board of Education, 2001 U.S. Dist. LEXIS 6994, \*11-***

***12 (N.D. Ill. March 19, 2001)***.

In the case at bar, the specialized issue concerns a Hearing Officer's determination

about a *Free Appropriate Public Education (FAPE)* for an indigent disabled minor who

attends a District of Columbia Public Charter School pursuant to the ***Individuals with***

***Disabilities Education Improvement Act, 20 U.S.C. § 1400 et seq.,*** and ***Hendrick***

***Hudson District Board of Education v. Rowley, 458 U.S. 176, 206 (1982)***. The finding

of *FAPE* requires specialized and technical training in special education and significant

experience with special education policy which Courts do not have. ***See Heather S. By***

*Kathy S. v. State of Wisconsin, 125 F.3d 1045, 1054 (7th Cir. 1997)*.  The Court in

*Heather S. By Kathy S. v. State of Wisconsin, supra*, went on to state:

> What exactly is the issue before the court when reviewing state IDEA administrative decisions?  *Rowley* warned that 'courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'  *Heather S. By Kathy S. v. State of Wisconsin, 125 F.3d 1045, 1054 (7th Cir. 1997)*.

In the case at bar, the Hearing Officer's determination of  *FAPE* was reached based

upon  specialized knowledge, experience and understanding of special education.

Therefore, this Court must defer to the final decision of the State Educational

Authorities.

> We believe *Rowley* requires that federal courts defer to the final decision of the state authorities,  *Karl v. Board of Education of Geneseco Central District, 736 F.2d 873, 877 (2nd Cir. 1984)*.

### (VI) PLAINTIFF-CHARTER SCHOOL BEARS THE BURDEN OF PROOF AS THE PARTY CHALLENGING THE OUTCOME OF THE ADMINISTRATIVE HEARING.

The Plaintiffs' Complaint essentially avers that the Hearing Officer's

Determination was wrong in the knowledge and resolution of specialized education

issues. *(See Complaint at pp. 2-6)*.  Plaintiffs' Complaint addresses technical questions

of *FAPE*, and asks this Court to substitute its definition of *FAPE*  in place of the Hearing

Officer's Determination *(See Hearing Officer's Decision)*.  As aforementioned,

Plaintiffs' efforts to replace the Hearing Officer's *FAPE* determination by a Federal

Judge must fail as a matter of law.  *See Karl v. Board of Education of Geneseco Central*

*District, 736 F.2d 873, 877 (2nd Cir. 1984).*

As a matter of law it is the Plaintiff-charter school which "bears the burden of

proof as the party challenging the outcome of the state administrative hearings." *Board*

*of Education of S.D. 21 v. Illinois State Board of Education, 938 F.2d 712, 716 (7th Cir. 1991)*.  Indeed, the party challenging the Hearing Officer's determination bears the burden of persuading the court that the Hearing Officer's Determination was incorrect. *Angevine Smith, 292 U.S. App. D.C. 346, 959 F.2d 292, 295 (1992)*;  *Kerkam v. McKenzie, 274 U.S. App. D.C. 139, 862 F.2d 884, 887 (1988)*;  *Lyons v. Smith, 829 F. Supp. 414, 417 (D.D.C. 1993)*.

Accordingly, this Court must give the Hearing Officer's determination "due weight," *Id. at 418*, and Plaintiffs, in order to prevail, must show by a "preponderance of the evidence" that the Hearing Officer was wrong.  In the case at bar, the Plaintiffs can **not** carry their burden of proof, therefore Defendants' Motion for Summary Judgment must be granted as a matter of law.

Respectfully submitted,

*/s/ Anna Forbes Towns*
Anna Forbes Towns (431553)
313 Hammonton Place
Silver Spring, Maryland 20904
(301) 680-9175