UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OPTIONS PUBLIC CHARTER SCHOOL:
:
    **Plaintiff**
:
:
    v.                          :    CIVIL ACTION NO. 06-1004 (PLF)
:
CAMILLE HOWE,                  :
as next friend of the minor child,
A.H.  *et. al.*                        :
:
    **Defendants**                    :

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, through undersigned counsel, files this opposition to defendants' motion for summary judgment and requests that this Court deny defendants' motion for summary judgment and grant plaintiff's motion for summary judgment.

## ARGUMENT

### Given the evidence presented at the due process hearing, Hearing Officer Butler-Truesdale erred in ordering independent evaluations.

The plaintiff requests that this Court deny defendants' motion for summary judgment and find that Hearing Officer Butler Truesdale erred in her May 23, 2006 Hearing Officer's Determination, when she ordered Options Public Charter School (hereinafter Options) to fund independent evaluations. The hearing officer failed to make the appropriate legal inquiries when ordering the independent evaluations. Additionally, the hearing officer failed to link the need for additional evaluations to any evidence presented at the due process hearing.

**I.  Hearing Officer Butler-Truesdale erred in ordering an independent occupational therapy evaluation.**

The defendants allege that Options failed to perform the occupational therapy evaluation and therefore, the hearing officer correctly ordered the independent occupational therapy evaluation.  The defendant, however, did not request an independent evaluation in her due process hearing request.   The complaint only requested that DCPS and/or Options be ordered to conduct evaluations, including an occupational therapy evaluation, within thirty calendar days.  AR at 29.  The complaint only requests independent evaluations if Options failed to conduct the evaluation in accordance with the Order.

An occupational therapy evaluation was not recommended in the psychoeducational evaluation completed by Options. AR at 41.    Additionally, the parent never requested an occupational therapy evaluation or any additional evaluations at any of the MDT/IEP meetings.  Tr. at 35-36.  When Options received the due process hearing request it treated it as a request for additional evaluations and held a resolution meeting.   At the resolution meeting Options agreed to complete an occupational therapy evaluation.  AR at 58.  The issue, therefore, was moot and should not have been litigated.

Additionally, in this case the parent never took the appropriate procedural actions to request an independent evaluation.  The regulations state: "A parent has the right to an independent educational evaluation at public expense if the parent disagreed with an evaluation obtained by the public agency."  34 CFR §300.503(b)(1).  In this case the

2

parent never disagreed with the evaluations completed by Options and did not request the additional evaluations until she filed the due process complaint. Options agreed to complete the occupational therapy evaluation, so ordering the independent evaluation was premature.

In her determination the hearing officer does not base her award of an independent occupational therapy evaluation on any conclusion of law or denial of FAPE. AR at 3-4. The determination does not mention any findings that link the need for an occupational therapy evaluation to any violation of FAPE by Options. In fact, the hearing officer repeatedly found Options' two witnesses credible. Plaintiff, therefore, requests that the hearing officer's order of an independent occupational evaluation be reversed.

**II. The issue of whether or not a regular education teacher attended the student's IEP meeting was not addressed in the hearing officer's determination; however, the record indicates that a proper IEP team convened.**

The defendants claim that the hearing officer correctly ordered an MDT/IEP meeting based on Options' alleged failure to include a regular education teacher at the student's IEP meetings. The hearing officer does not mention the previous IEP meetings in her determination. AR at 3-4. She does not make a finding that Options failed to convene an appropriate IEP meeting. The only reason the hearing officer ordered an IEP meeting was for the team to review the additional evaluations. The defendant explains possible logic the hearing officer *could have* used to order an MDT meeting, but none of these arguments are actually included in the hearing officer's

determination. This argument, therefore, is fruitless.

Regardless, the record proves that all appropriate members of the IEP team participated at the meetings. The MDT meeting notes from the January 12, 2006 meeting, show that Miguel Davis, the student's math teacher attended the meeting. AR at 114. The team concluded that the student was eligible as a learning disabled student and required a self-contained classroom. *Id*. The team then reconvened on January 26, 2006, and wrote a full-time IEP for a self-contained classroom. Both parents agreed with the self-contained classroom. The defendant, however, then came back to the school and met with the team for an additional three hours and requested that the IEP be changed so that the student would have less hours of services. Tr . 35-37. The meeting notes do not reflect signatures of all participants, but the special education coordinator, Paris Adon, explained that discrepancy at the due process hearing. He stated:

> [T]here were several [teachers]. They were in and out: Ms. Griser, Mr. Davis, Mr. Samuels...They didn't sign because they were frustrated. So they left the meeting. Ms. Griser was available by phone. Mr. Leonard was there and Mr. Samules was there but they were frustrated because the meeting had went on so long that they decided to leave. Tr. 47-48.

By the end of the meeting, Mr. Adon created a special schedule that would apply only to this student in order to satisfy the mother's concerns. Tr. At 35-37. Shortly, thereafter, the parent filed a hearing request.

The defendant argues that the hearing officer rejected Mr. Adon's testimony and ordered an additional MDT meeting. At this point the defendant is putting words in the hearing officer's mouth instead of relying on the written determination. In her determination, the hearing officer finds Mr. Adon's testimony credible and makes no

mention of an illegally convened IEP meeting, so it is unclear upon what evidence the defendant is relying.

The defendant's argument that the hearing officer correctly ordered an additional MDT meeting is not linked to any denial of FAPE. Options met with the defendant for hours trying to develop an IEP that would address the student's weaknesses and satisfy the mother's concerns. Options never stated it was unwilling to meet with the parent. The main obstacle for Options was the fact that the student's father agreed with the full-time IEP, and the student's mother, the defendant, wanted a lesser restrictive environment. Therefore, the defendants' argument that Options should have been ordered to convene another MDT meeting bears little, if any, weight because it was the student's parents, not Options stalling the IEP process.

**III. The hearing officer erred in ordering additional independent evaluations, including a speech and language evaluation, a social history, a clinical evaluation and a vision and hearing evaluation.**

In her hearing determination the hearing officer relied solely on the behavior of the parent as her reasoning for ordering additional evaluations. The hearing officer stated, "the candid revelation of the mother of her own disability and the resulting conduct displayed during and after the hearing conclusively reveals that further evaluations [of the student] are warranted." AR at 3. The hearing officer does not link the need for additional evaluations to any specific needs or weaknesses of the student. She only discusses the behavior of the mother. Neither the hearing officer nor the defendant cite anything in IDEIA that states a parent's behavior should cause the

5

school to complete additional evaluations.

The only evidence cited by the hearing officer which relates to the behavior of the student is the testimony of Dr. David Cranford, Options' clinical psychologist. He completed intellectual testing, academic testing, a visual motor screening, a clinical interview, a classroom observation and a behavioral screening. AR at 33-41; Tr. at 54-56. When questioned about additional testing he stated that he did not witness any behavioral incidents and that the only behavioral issues he believed were present were due to academic frustration. Tr. at 57-59. He also stated that this frustration did not rise to a level of emotional disturbance. *Id.* The hearing officer found this testimony credible and it was not rebutted by the defendants. AR at 3.

The parent's advocate Cindy Higgenbothom testified but is not mentioned in the hearing officer's determination. The advocate was not qualified as an expert because she did not have a background in a field relevant to the education of this student. The advocate, therefore, only testified as a fact witness about her attendance at the resolution meeting, meaning Dr. Cranford's testimony remained undisturbed.

The defendants argue that the hearing officer employed her skills in special education to deduce that the parent had a disability. It is unclear what special education skills the defendant is referring to given that the professional background information supplied by the student hearing office states that the hearing officer previously worked at FEMA and in employment law. (See Ex. #1)

The defendant also states that the hearing officer relied on the psychoeducational report which mentions ADHD and oppositional defiant disorder. Again the defendant is putting words in the hearing officer's mouth. The determination

6

makes no mention of ADHD or oppositional defiant disorder.  The psychoeducational evaluation states that the student exhibited behaviors which may be characteristic of these two disorders; however, Dr. Cranford also stated these behaviors could be a consequence of severe learning disabilities that were not addressed prior to the student attending Options. AR. At 40.   Dr. Cranford, therefore, recommended intensive special education services for the student's academic weakness along with counseling to address her frustration. AR at 41.  The hearing officer found this testimony credible and the defendant did not offer any evidence to rebut the evidence Options presented.  AR at 3.  Therefore, the hearing officer's findings that additional evaluations were warranted based on the mother's behavior should be overturned.

**IV.  The hearing officer's determination was not based on sound education policy and should be overturned.**

The defendant argues that federal judges are not trained in special education and therefore, the Court should defer to the hearing officer.   However, as stated above, it is unclear what special training this hearing officer has in special education.  The only people trained in special education who attended the due process hearing were Options witnesses, Paris Adon and Dr. David Cranford.

This Court has ruled that "due weight" is not only given to the hearing officer but also to the school officials responsible for the student's education.  As stated in *Lyons v. Smith*, "The Court must make an independent review of the evidence, but in so doing it must also give 'due weight' to the administrative proceedings and afford some deference to the expertise of the hearing officer and school officials responsible for the

child's education". 829 F. Supp. 414, 418 (D.D.C. 1993). In the current case an independent review of the evidence would uncover the hearing officer's failure to link any of the ordered relief to evidence presented at the due process hearing. The hearing officer found both of Options' witnesses credible and cited no evidence presented by the defendant. However, she not only found in the defendant's favor, she ordered more relief than the defendant requested in the due process complaint. Such inconsistencies should not be upheld.

Additionally, the defendants continually cite *Hendrick Hudson v. Rowley* as authority that a hearing officer cannot be overruled. *458 U.S. 176 (1982).* Ironically, this hearing officer failed to apply the *Rowley* standard in her determination. Under *Rowley*, there is a two part test a school district must meet to provide a FAPE. 458 U.S. 176 (1982). First, the district must comply with the procedures set forth in IDEA. Second, if the educational program was developed under the proper procedures, that program must be reasonably calculated to enable the student to receive educational benefit. *Id*. at 206-07. If both prongs of the *Rowley* test are met, then a student has been provided a FAPE. The hearing officer never mentions either of these prongs.

Regardless, the hearing officer found no procedural errors in her determination. As to the substance of the program, she made no finding that the IEP was not reasonably calculated to enable the student to receive educational benefit. AR at 3. In fact, the school acquiesced to the mother's request that the student's initial level of services be reduced so the student would not be stigmatized.

Complicating the matter is the fact that the student's parents disagreed with each

other as to the level of services, leaving the school with the duty to mediate between the parents.  The school met with the defendant numerous times to attempt to draft a program that would meet the student's needs and satisfy the parent's concerns.  The hearing officer ignored these attempts and ordered additional testing based solely on the behavior of the parent.  Consequently, the relief ordered was inappropriate because it was not linked to a finding that the IEP was procedurally defective or not calculated to enable the student to receive educational benefit.  Therefore, the determination should be reversed.

**V.  Options has met its burden of proof.**

As stated above, Options provided the only expert testimony in this case. Options' witnesses were consistent in testifying that the student's learning disabilities appeared to be the cause of academic frustration which led to occasional behavior problems.  AR at 40-41, Tr. at 57-59.  Options' special education coordinator also testified about the numerous and lengthy attempts the school made to draft a program which met the approval of the parents.  Tr. At 35-37.  The hearing officer found this testimony credible and did not cite any evidence presented by the defendant that contradicted this evidence.  AR at 3-4.

The hearing officer, however, ordered independent evaluations based solely on the behavior of the parent, not the student, at the due process hearing.  In making this ruling the hearing officer failed to link her order to any evidence presented at the due process hearing.  She failed to apply the *Rowley* standard when considering whether or not the IEP drafted by Options was appropriate.  She also failed to apply the proper test

for determining whether independent evaluations are warranted given the parent never requested the additional evaluations until she filed the due process complaint.

The hearing officer failed to make a finding that the defendant's behavior interfered with Options' ability to implement a consistent program for the student. Options offered a complete spectrum of services for the student including a special schedule of classes designed solely for her at her mother's request.  The mother agreed and then filed this hearing request. The student's father, however, disagreed and requested that his daughter remain in the self-contained classroom.  Consequently, it was the defendant, not Options that not only stalled the special education process, but failed to act in good faith.

Given the numerous errors committed by the hearing officer it is clear Options not only met its burden of proof at the due process hearing, but has also met its burden to have the hearing officer's determination reversed.

## CONCLUSION

Based on the arguments above the plaintiff requests that this Court issue a Summary Judgment for the Plaintiff and against the Defendant and issue a finding that Options PCS did not deny the student a FAPE.

Respectfully submitted,
/s/
William E. Houston, Esq
D.C. Bar No. 450223
Dalton, Dalton, & Houston, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (O)
(703) 739-2323 (F)