**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**OPTIONS PUBLIC CHARTER SCHOOL:**
                                              :
      **Plaintiff**                       :
                                              :
        **v.**                          :     **CIVIL ACTION NO. 06-1004 (PLF)**
                                              :
**CAMILLE HOWE,**                      :
**as next friend of the minor child,**  :
**A.H.** *et. al.*                          :
                                              :
      **Defendants**                    :


<u>**MOTION FOR SUMMARY JUDGMENT**</u>

The plaintiff, through undersigned counsel, requests that this Court grant a

summary judgment pursuant to Federal Rule of Civil Procedure 56©, finding that

Hearing Officer Butler Truesdale erred in her May 23, 2006 Hearing Officer's

Determination, when she ordered Options Public Charter School (hereinafter Options)

to fund independent evaluations.  This ruling was made without the defendant rebutting

any of the evidence presented by Options.  Additionally, the hearing officer showed her

bias toward the parent several times during the hearing.  She made no finding that the

evaluation or program designed for the student were inappropriate, yet she ordered

independent evaluations.  The plaintiff, therefore, believed that the hearing officer erred

when she failed to dismiss the due process complaint.

<u>**FACTUAL BACKGROUND**</u>

Plaintiff, the Options Public Charter School is a District of Columbia Public

Charter School which has elected to be its own local education agency (LEA) under

IDEA, for special education issues.  AR at 27.  Defendant, Camille Howe, is the legal

guardian of her minor child, A.H., and they are currently residents of the District of Columbia and claimed D.C. residency for all or part of the time during the underlying administrative proceedings. AR. at 26.   A.H. is a fourteen (14) year-old student who attended Options for the 2005-2006 academic school year.  AR at 27.  On October 18, 2005, Options held a multi-discipline team (MDT) meeting to discuss whether A.H. needed special education services.  During that meeting Ms. Howe gave consent to Options to initiate evaluations.  AR at 28.  On  January 12, 2006, after several attempts to have Ms. Howe attend another MDT meeting, Options convened the eligibility meeting to discuss the evaluations and decide whether A.H. was eligible for special education services.  AR at 114, 118.  The members of the MDT meeting agreed that A.H. did qualify for special education services as a learning disabled child, and the team agreed that she needed a self-contained special education program.  Both the mother and father of A.H. agreed to this finding. AR at 114.

On January 26, 2006, the MDT convened again to discuss the IEP and placement. AR at 113.  The team agreed with the proposed IEP, the goals and objectives, the number of hours of special education and related services and the placement in the self-contained special education program at Options. Tr. at 29-31. The father, Gregory Bush signed and approved the IEP.  AR at 106.   After the father left, the mother raised an objection to the full-time self-contained program and convinced the special education coordinator (SEC) at Options to reduce the number of hours and the team agreed to lower the number of special education hours to fifteen (15) hours a week, down from twenty-four (24) hours a week. AR at 106.  The related service of half an hour of counseling remained unchanged.   AR at 106.

2

On March 13, 2006, the mother filed a due process complaint, alleging:

> Whether this student was denied FAPE due to the failure of DCPS and/or Options PCS to evaluate the student in all areas of suspected disability prior to making a determination of the appropriate disability code and special education eligibility.
> Whether this student was denied FAPE due to the failure of DCPS and/or Options PCS to provide her with an educational program consistent with her current IEP.
> Whether this student was denied FAPE due to the failure of DCPS and/or Options PCS to convene a legally constituted IEP team meeting to make the eligibility determination, determine the appropriate disability code and to develop an appropriate IEP and educational program for the student.
> Whether this student was denied FAPE due to Options PCS changing the number of service hours on the IEP without the participation of the parent or IEP team.
> Whether this student is entitled to an award of compensatory education due to lost services based upon violations regarding the student's IEP, services and/or placement.  AR at 29.

On March 27, 2006, Options convened a resolution meeting to resolve the issues of the hearing complaint. AR at 140.  The resolution session ended without success because the student's mother and father could not agree to anything regarding the child's IEP. AR at 140-141.  On May 12, 2006, the District of Columbia Public School, Student Hearing Office convened a due process hearing with Ms. Tonya Butler-Truesdale presiding as the hearing officer.  AR at 72.

Mr. Paris Adon, the special education coordinator, testified that Options began the testing process because of learning difficulties the student was experiencing. Tr. at 29-31.  He further testified no one questioned the full-time special education program until after the father, Mr. Bush left the January 26, 2006 IEP meeting.  Tr. at 34-37. He testified that the mother and the team continued without the father for hours and decided to lower the hours because of mother's insistence.  *Id.*

Dr. Cranford, a clinical psychologist, testified that he tested the student and

3

found she was a learning disabled student.  He conducted several clinical measures to
see whether there were any underlying emotional problems.  He testified there were
none.  In the expert opinion of Dr. Cranford, he concluded there was no need for any
additional testing.

The defendant, Ms. Howe offered no testimony to refute Mr. Adon's statement of
the facts, nor was there any testimony to refute Dr. Cranford's testimony. Tr. at 125-
133, 153-168.   In fact, the hearing officer, in her May 23, 2006 Hearing Officer's
Decision (HOD) states: "The credible testimony of Paris Adon reveals that Options
Public Charter School was aware of Petitioner's needs for special education services
and attempted to address the concerns of the Petitioner's mother within a reasonable
time period."  AR at 3. The hearing officer also found Dr. Cranford's testimony credible
stating:

> The testimony of Dr. Crawford (*sic*) regarding the sufficiency of the
> psychological evaluation which employed seven different assessment
> instruments was also compelling.  This hearing officer fins (*sic*) the
> testimony of Dr. Crawford logical and credible.  Dr. Crawford's deduction
> that the psycho-educational was sufficient given the non-predominate
> display of emotional triggers lends reason to the schools decision not to
> immediately employ clinical assessments.  *Id.*

The defendant, Ms. Howe offered no expert testimony.  The only witness
presented, Ms. LaTanya Higginbotham did not qualify as an expert in any educational
field, even though her self-proclaimed title is "special education advocate." Tr. at 153-
168.

The defendant, Ms. Howe did not disturb the testimony of the two witnesses from
Options. Yet, the hearing officer, even after stating the Options witnesses were credible
stated:

> However, it is entirely conceivable, given the nature of the parent's challenging participation in the hearing, that the mother's participation in the IEP meetings should have alerted Respondent Options that more comprehensive evaluations were warranted. AR at 3.

The hearing officer then goes on to state:

> The candid revelation of the mother of her own disability and the resulting conduct displayed during and after the hearing **conclusively** reveals that further evaluations are warranted." (Emphasis added). *Id*.

The hearing officer then ordered Options to fund "independent speech and language evaluations, a clinical evaluation, an occupational therapy assessment, social history, and vision and hearing screening within the superintendent's cost guidelines." AR at 4. The remedy the hearing officer provided was not the remedy the defendant, Ms. Howe requested in the due process complaint. AR at 29. The complaint only requested that DCPS and/or Options PCS be ordered to conduct the following evaluations within 30 calendar days of the date of the Hearing Officer's Decision: Speech/Language Evaluation; Clinical Evaluation; Occupational Therapy Assessment; Social History; Clinical Evaluation; FBA and BIP; and Vision and Hearing Screening. *Id.* The complaint only asked for the independent assessments if Options failed to conduct the evaluations within the thirty days. *Id.* Options, therefore, appealed this decision.

## ARGUMENT

### Given the evidence presented at the due process hearing Hearing Officer Butler-Truesdale erred in ordering independent evaluations.

The party seeking summary judgment has the initial responsibility of demonstrating the absence of a genuine dispute of material facts though the pleadings, depositions, answers to interrogatories, admissions on file, and in this case the

administrative record. *Celortex Corp v.Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ.

P. 56.  The nonmoving party must then "go beyond the pleadings and by [its] own

affidavits, or by 'depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial.'" *See Celortex* at

324.  In the instant case, the facts are clear when reviewing the administrative record.

     The issues in this case are legal in nature because the underlying factual issues

are undisputed.  Options contends that the hearing officer erred in ordering

independent evaluations given the lack of evidence that additional areas of suspected

disabilities existed and given that the parent never procedurally challenged the

evaluation completed by Options.  Additionally, the hearing officer based her decision to

order additional evaluations on the parent's behavior at the due process hearing, and

not the child's behavior in the classroom.  Lastly, throughout the hearing the hearing

officer reveled her bias toward the parent and awarded more relief than the parent

initially requested in her due process complaint.

     The evidence regarding these issues is clear and the facts surrounding them are

undisputed in the record which makes this case appropriate for a summary judgment.

**A.  Hearing Officer Butler-Truesdale erred in ordering independent evaluations
given the lack of evidence presented by the defendant, the defendant's failure to
procedurally challenge Options' evaluation and given that the defendant did not
seek independent evaluations in her hearing complaint.**

     In the defendant's hearing request she alleged the following allegations

against Options:

1.     Whether this student was denied FAPE due to the failure of DCPS and/or Options PCS to evaluate the student in all areas of suspected disability prior to making a determination of the appropriate disability code and special education eligibility.

2.     Whether this student was denied FAPE due to the failure of DCPS and/or Options PCS to provide her with an educational program consistent with her current IEP.

3.     Whether this student was denied FAPE due to the failure of DCPS and/or Options PCS to convene a legally constituted IEP team meeting to make the eligibility determination, determine the appropriate disability code and to develop an appropriate IEP and educational program for the student.

4.     Whether this student was denied FAPE due to Options PCS changing the number of service hours on the IEP without the participation of the parent or IEP team.

5.     Whether this student is entitled to an award of compensatory education due to lost services based upon violations regarding the student's IEP, services and/or placement.

In response to these allegations Options presented three witnesses Paris Adon, Options special education coordinator, Dr. David Cranford, clinical psychologist and Gregory Bush, the student's father.

    Mr. Adon testified that the parties agreed to conduct a psychoeducational given the student's learning difficulties. An initial meeting to review the evaluation was scheduled for December 14, 2005. When defendant did not arrive for the meeting it was rescheduled for January 12, 2006. At that meeting the team agreed that the student qualified as a student with a learning disability and that the student required a full-time special education program. The team met again on January 26, 2006, with both parents and drafted the IEP. Once the student's father left the meeting, the defendant requested that the team change the level of services. After three hours the team agreed to create a special schedule for the student where she would spend part of the day in a co-taught classroom and part of the day in the self-contained classroom. At no point did the defendant object to the evaluation that was completed. Tr. at 35-36.

At no point did the defendant request additional evaluations or disagree with the classification. *Id*. Shortly after this meeting the defendant filed the due process hearing complaint.  A resolution meeting occurred, but the parents, not the school, failed to reach an agreement. AR at 140-141.

Dr. David Cranford, Options' clinical psychologist testified as an expert in school psychology and clinical psychology.  Tr. at 51-53.  He performed the evaluation on the student.  He completed intellectual testing, academic testing, a visual motor screening, a clinical interview, a classroom observation and a behavioral screening. AR at 33-41; Tr. at 54-56.   When questioned about additional testing he stated that he did not witness any behavioral incidents and that the only behavioral issues he believed were present were due to academic frustration. Tr. at 57-59.  He also stated that this frustration did not rise to a level of emotional disturbance.  *Id*.   To assist with frustration and self-esteem issues, he recommended counseling.  He stated that the defendant never requested additional testing before the due process hearing request was filed nor did she ever disagree with his evaluation.  Tr. at 60-62.

Lastly the student's father testified.  Tr. at 80. He stated that he still believes that the student needs a self-contained classroom.  He also never requested additional evaluations.   Tr. at 91-92.

The defendant never refuted any of this testimony during the due process hearing.  Only two witnesses testified on behalf of the defendant.  First the mother testified.  Upon commencement of cross-examination, the hearing officer stopped the questioning and questioned the mother herself.  Tr. at 121-153.  When asked numerous times why her daughter needed a speech and language evaluation, the

8

defendant finally replied she curses and talks back using foul language.  Tr. at 126-129.

When asked about articulation the defendant stated "Well, she ain't talking with slurred – like she slurred or anything." Tr. At 192.  She stated that the student had been tested and did not have any vision problems.  When asked about a social history the mother reported that the student was argumentative at home and stated she was frustrated at school which is exactly what Dr. Cranford stated. Tr. at 130-131.  The hearing officer then explained that there had to be additional areas of suspected disability to complete additional evaluations and at this point she did not see other areas that warranted testing. Tr. at 153-168.

Lastly, the parent's advocate Cindy Higgenbothom testified.  She was not qualified as an expert and only testified as to her attendance at the resolution meeting. She also stated on cross examination that Options agreed to complete an occupational therapy evaluation, but there was no resolution to the other issues.  See Tr. At 188-189. None of this testimony rebutted the evidence presented by Options' witnesses.  No expert testimony was presented to rebut Dr. Cranford's testing.  Additionally, the student's father agreed with Options' initial placement, which was a self-contained classroom. There was no testimony that the parent ever requested additional evaluations at the first two IEP meetings or that she rejected the evaluations completed by Options. Additionally, the parent never requested a placement other than Options.

IDEA requires that a local education agency (LEA) evaluate students in all areas of *suspected* disability. (Emphasis added).  34 CFR §300.304(b)(4) (August 14, 2006). In this case, six different measures were used to assess the student.  The parent was mainly concerned about the student's level of frustration.  The only expert testimony on

9

this issue was never rebutted.  Dr. Cranford stated that he believed the frustration was

due to the student not previously receiving services for her learning disability.  The

defendant did not provide any evidence of suspected disability in other areas.  In her

May 23, 2006, determination the hearing officer did not link the additional evaluations to

any specific facts or areas of concern regarding the student.  AR at 3.  In fact at the end

of the hearing the hearing officer stated "It seems like it's a leap to me for further

evaluations when we haven't even put her in a alternative setting yet...I don't know that

I heard et (sic) in three hours what factors occurred that would have put them on notice

that the other evaluations were warranted " Tr at 201-202.  Since no evidence existed

regarding the student's need for additional evaluations, the hearing officer stated that

the mother's behavior at the due process hearing and evidence that the mother had a

disability should have alerted the school that the student needed additional evaluations.

AR at 3.

Second, the parent never took the appropriate procedural actions to request an

independent evaluation.  The regulations state: "A parent has the right to an

independent educational evaluation at public expense if the parent disagreed with an

evaluation obtained by the public agency."  34 CFR §300.503(b)(1).  In this case the

parent never disagreed with the evaluation Options performed and never requested

additional evaluations.  Had she objected to the evaluation, the school would have two

options: file a hearing request to defend its evaluation or fund the independent

evaluation.  34 CFR §300.503(b)(2).   Options, however was never put on notice that

the parent either disagreed with the evaluation or was requesting additional evaluations.

In fact parent's counsel actually stated that her client did not object to the

psychoeducational because otherwise she would have requested independents.  Tr. at 196.

Since the parent never requested additional evaluations prior to the filing of the hearing complaint, the hearing officer only needed to apply the two part test of FAPE in *Rowley* as to the appropriateness of services.  Under *Board of Education v.  Rowley*, there is a two part test a school district must meet to provide a free appropriate public education (hereinafter "FAPE").  458 U.S. 176 (1982).  First, the district must comply with the procedures set forth in IDEA.  Second, if the educational program was developed under the proper procedures, that program must be reasonably calculated to enable the student to receive educational benefit.  *Id*. at 206-07.  If both prongs of the *Rowley* test are met, then a student has been provided a FAPE.  The hearing officer found no procedural errors in her determination.  As to the substance of the program, she made no finding that the IEP was not reasonably calculated to enable the student receive education benefit.  AR at 3.  In fact, the school acquiesced to the parent's request that the student begin with a lower level of services so she would not be stigmatized.  Complicating the matter is the fact that the student's parents disagreed with each other as to the level of services leaving the school with the duty to mediate between the parents.   In fact the hearing officer acknowledged the fact that the parent probably bore some of the fault with Ashley's situation:

Hearing Officer: [AH] has lost an entire year.

Ms. Towns: It's not due to the mother.

Hearing Officer: I'm not sure.  I don't know and I don't want to get into that.  Tr. at 199.

11

Regardless, all changes to the IEP were parent driven and therefore, the hearing officer made no finding that the IEP developed by Options was inappropriate.  AR at 3.

Lastly, the hearing officer granted more relief than the parent requested when she ordered independent evaluations.  The complaint only requested that  DCPS and/or Options PCS be ordered to conduct the following evaluations within 30 calendar days of the date of the Hearing Officer's Decision: Speech/Language Evaluation; Clinical Evaluation; Occupational Therapy Assessment; Social History; Clinical Evaluation; FBA and BIP; and Vision and Hearing Screening.   The complaint only asked for the independent assessments if Options failed to conduct the evaluations within the thirty days.  The school agreed to complete the occupational therapy evaluation at the resolution meeting.  However, the hearing officer made no finding that the previous evaluation was not comprehensive and cited no evidence attributed to the student that proved other areas of suspected disability existed.  The hearing officer ordered this relief despite the fact the parent's attorney stated that she was not requesting independent evaluations.  Tr. at 196.

Given that the evidence presented by Options was never rebutted, and the evidence that the defendant was the party who insisted on decreasing the level of services, the hearing officer should have found that Options met its burden of proof.  Consequently, the hearing complaint should have been dismissed.

**B.  Hearing Officer Butler-Truesdale erred in relying on the behavior of the parent at the due process hearing instead of the substantive evidence presented by Options.**

In her May 23, 2006, determination, the only evidence the hearing officer relied on in ordering the evaluations was the behavior of the parent in the due process hearing.  She found the testimony of the clinical psychologist and special education coordinator credible. She stated, "Dr. Crawford's (sic) deduction that the psycho-educational was sufficient given the non-predominate display of emotional triggers lends reason to the schools decision not to immediately employ clinical assessments." AR at 3.  She then goes on to state:

> However, it is entirely conceivable, given the nature of the parent's challenging participation in the hearing, that the mother's participation in the IEP meetings should have alerted Respondent Options that more comprehensive evaluations were warranted...The candid revelation of the mother of her own disability and the resulting conduct displayed during and after the hearing conclusively reveals that further evaluations are warranted. *Id.*

IDEIA does not include the behavior of the parent as a factor in considering whether a child might need additional evaluations.  The team must determine if a *student's* disability is impacting her ability to obtain educational benefit in the *classroom*. Under *Rowley*, the hearing officer must make a determination of whether or not program is reasonably calculated to enable the student to receive educational benefit. 458 U.S. 176, 201-202.  In this case the question would be whether the evaluations offered enough data to draft an appropriate IEP.  Nothing in the *Rowley* test includes the impact of parental behavior.  If anything, in this case the parent only interfered with the schools ability to implement the student's IEP.  Such behavior, however does not

13

warrant additional testing of the student.

The hearing officer's assertion that the school needed to perform additional testing given the parent's behavior is not supported by any conclusion of fact or law in the determination. AR at 3. The only expert who testified at the due process hearing, Dr. Cranford, stated that he believed the student's learning disability was the source of her frustration. Whether or not the parent had a disability does not automatically require the school to complete an entire battery of testing after it had concluded and the parent agreed that the student had a learning disability which was affecting her in the classroom both academically and behaviorally. The ruling, therefore, should be overturned.

**C. Hearing Officer Butler-Truesdale erred when she revealed her bias for the parent and against the school**.

Both parties are entitled to an impartial hearing officer. 34 CFR §300.511©. A Hearing Officer "enjoys a presumption of honesty and integrity, which is only rebutted by a showing of some substantial countervailing reason to conclude that a decision maker is actually biased with respect to factual issues being adjudicated." *Harline v. Drug Enforcement Admin.*, 148 F.3d 1199, 1204 (10th Cir. 1998) (citing *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975));

In this case there were several instances where the hearing officer revealed her bias for the parent. Throughout the hearing, Hearing Officer Butler-Truesdale acted more as a mediator and counselor for the parent, rather than a trier of fact. As stated above, the parent never objected to the psychoeducational completed by Options. The hearing

officer, however, admitted to prompting the parent and her attorney to disagree with the report at the due process hearing. The hearing officer repeatedly asked the parent and parent's counsel if they disagreed with the psychoeducational evaluation even though that issue was not pled in the due process complaint. *See* Tr. 150-51. Later in the hearing the hearing officer then admitted to prompting testimony from the parent. She stated:

> And then the parent already has an existing statutory right, as I kept trying to prompt you all to, to get another psycho-educational which may or may not suggest further evaluations. I'm not sure why that hasn't been done, which is why I kept saying do you agree or disagree with the psycho-education (sic). Tr. at 200.

Such a statement shows complete disregard for the procedures in place for filing a due process complaint. A party cannot amend a due process hearing complaint during the due process hearing, which is what the hearing officer was prompting defendant's counsel to do. 34 CFR §300.508(d)(3).

    The hearing officer continued to prompt the witness and her counsel by focusing on issues which were not pled and by outlining the steps they needed to take following the due process hearing. For example, the hearing officer continued to focus on her concerns for the student's placement, even though the parent and her attorney only requested additional evaluations. She stated:

> I think that its going to be difficult for me to make a decision in this matter, given that the only thing that we're in agreement on is the current setting isn't working...I think that I don't know how I can make that determination ( the need for additional evaluations), without knowing how she functions in what might be an optimal setting. *See* Tr. At 197-98.

She goes on to state:

> The order that I made is not an order where I can order you to put her in a self-

15

contained class.  That's something you'll have to arrange with them. The order that I will put out will be a ruling on whether or not they should have tested her in other areas...Do you understand that she may be as emotional as she wants to be, but if it does not impact her ability to perform in the class, that they don't have to service her in that area or evaluate her in that area?  Which is one of the reasons that you want to get her in that setting that they're suggesting so that if she the still doesn't perform, you have a stronger rationale for getting more text (*sic*)...Okay. *Well, I hope that you're listening because I have given you several clues in the last five minutes as to the path to that.*"(Emphasis added)
<u>Ms. Howe</u>: Well, she can go back to the self-contained classes.
<u>Hearing Officer</u>: There's a path to it.  It's a path to it, and you just keep bumping your head up and against the wall, you know, like I'm going to fight, I'm going to fight.  All you end up with is a bloody head.  There's a path to what I think you're trying to do; I don't have that before me today. *See* Tr. at 224-227.

Such statements exceed her authority as a hearing officer and prove her bias in favor of the parent.  A hearing officer should not take the role on advising a parent how to proceed after a due process hearing.  Such advice should be left to parent's counsel.

Additionally, during the hearing, the hearing officer stopped the cross examination of the parent by counsel for Options because she did not believe the parent could understand the questions even though the parent was able to provide answers during direct examination. Tr. at 122.  The hearing officer then questioned the parent and basically allowed parent's counsel to testify for her.  See Tr. at.142-150. Towards the end of the hearing, the hearing officer repeatedly stated that she would try to find a way to link the need for additional evaluations to the evidence presented. Tr. at 201-203.  She continually focused on her desire to " help" and "satisfy" the parent instead of gathering evidence and ruling on the issues presented.  During the course of the hearing she made the following statements:

- •     ...Because I would really like to please you.  I'd like to put out an order exactly what you want, but you know, I'm not Santa Claus.  See Tr. At 206.

- I just – I swear to God, if we were sitting in my living room I'd let you to talk to me for three or four hours about your situation.  Tr. 181-182.

- I want to say that I am extremely concerned.  Really, I mean, because like I said whatever I put out is not going to meet all of the – it's not – I would like – the only thing that makes it worth, again – I'll say it again – not eating, being late on my orders that I get fined $300 for.  Okay?  Three hundred dollars are coming out of my pocket because I should be back there writing decisions.  Okay? – is that I at least feel like there's some temporary resolution to the child's situation.  I don't see that here.  Really I'm not certain that I did not waste my time because the real issue is here that you don't agree about the setting, and the evaluations are secondary.  But the year is lost.  The child is in an inappropriate setting.  A cause of action is probably – and there are steps to get to a cause of action.  There are certain steps to get to it.  So I will do everything that I can to have made this almost four hours productive, but the case is framed by certain parameters, and I have to act within those parameters. Tr. at 232-233

- I know that it's difficult.  I have been very patient.  I've gone beyond what my contract requires me to do because I, too, am a mother, and I'm really tired of giving this speech to parents who come in here and won't help me help their children.  If there's a choice between two alternatives, I know that you have been through hell from August 1st.  I heard the chronology of events that you gave me, but you're leaving me, walking out, standing up ready to walk out of the door without me having an idea of what alternative it is that you're imagining I can order..." Tr. At 215
<u>Ms. Howe</u>: Well, they shouldn't have even haven't never came to the table because I never seen somebody have to come through a school system just to get for someone to help your child.  Unbelievable.  Unbelievable. <u>Hearing Officer:</u> Agreed.

Given these examples of bias, the plaintiff requests that the hearing officer's determination be overturned.  A hearing officer is supposed to weigh the evidence presented by both parties and link the evidence to the appropriate legal inquiries that have been discussed in the previous two sections of this motion.  It is not the hearing officer's duty to manipulate the evidence to grant the relief the parent requests.  Additionally, the hearing officer does not play the role of mediator.  Mediation is an option for every parent before a due process hearing.  Ms. Howe, refused mediation.

17

Therefore, the hearing officer's role was to hear the evidence as presented, not elicit information or counsel the parent on potential causes of action against the school.

**D.  The hearing officer's determination was not based on sound education policy and should be overturned.**

This Court has ruled that "due weight" is not only given to the hearing officer but also to the school officials responsible for the student's education.  As stated in *Lyons v. Smith*, "The Court must make an independent review of the evidence, but in so doing it must also give 'due weight' to the administrative proceedings and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education". 829 F. Supp. 414, 418 (D.D.C. 1993). In the current case an independent review of the evidence would uncover the hearing officer's failure to link any of the ordered relief to evidence presented at the due process hearing. The hearing officer found both of Options' witnesses credible and cited no evidence presented by the defendant.  However, she not only found in the defendant's favor, she ordered more relief than the defendant requested in the due process complaint.  Such inconsistencies should not be upheld.

While *Hendrick Hudson v. Rowley* is often cited as authority that a hearing officer cannot be overruled.  *458 U.S. 176 (1982).*  Ironically, this hearing officer failed to apply the *Rowley* standard in her determination. Under  *Rowley*, there is a two part test a school district must meet to provide a FAPE.  458 U.S. 176 (1982).  First, the district must comply with the procedures set forth in IDEA.  Second, if the educational program was developed under the proper procedures, that program must be reasonably

18

calculated to enable the student to receive educational benefit. *Id*. at 206-07. If both prongs of the *Rowley* test are met, then a student has been provided a FAPE. The hearing officer never mentions either of these prongs.

Regardless, the hearing officer found no procedural errors in her determination. As to the substance of the program, she made no finding that the IEP was not reasonably calculated to enable the student to receive educational benefit. AR at 3. In fact, the school acquiesced to the mother's request that the student's initial level of services be reduced so the student would not be stigmatized.

Complicating the matter is the fact that the student's parents disagreed with each other as to the level of services, leaving the school with the duty to mediate between the parents. The school met with the defendant numerous times to attempt to draft a program that would meet the student's needs and satisfy the parent's concerns. The hearing officer ignored these attempts and ordered additional testing based solely on the behavior of the parent. Consequently, the relief ordered was inappropriate because it was not linked to a finding that the IEP was procedurally defective or not calculated to enable the student to receive educational benefit. Therefore, the determination should be reversed.

**E. Options has met its burden of proof.**

As stated above, Options provided the only expert testimony in this case. Options' witnesses were consistent in testifying that the student's learning disabilities appeared to be the cause of academic frustration which led to occasional behavior problems. AR at 40-41, Tr. at 57-59. Options' special education coordinator also

testified about the numerous and lengthy attempts the school made to draft a program which met the approval of the parents. Tr. At 35-37. The hearing officer found this testimony credible and did not cite any evidence presented by the defendant that contradicted this evidence. AR at 3-4.

The hearing officer, however, ordered independent evaluations based solely on the behavior of the parent, not the student, at the due process hearing. In making this ruling the hearing officer failed to link her order to any evidence presented at the due process hearing. She failed to apply the *Rowley* standard when considering whether or not the IEP drafted by Options was appropriate. She also failed to apply the proper test for determining whether independent evaluations are warranted given the parent never requested the additional evaluations until she filed the due process complaint.

The hearing officer failed to make a finding that the defendant's behavior interfered with Options' ability to implement a consistent program for the student. Options offered a complete spectrum of services for the student including a special schedule of classes designed solely for her at her mother's request. The mother agreed and then filed this hearing request. The student's father, however, disagreed and requested that his daughter remain in the self-contained classroom. Consequently, it was the defendant, not Options that not only stalled the special education process, but failed to act in good faith.

Given the numerous errors committed by the hearing officer it is clear Options not only met its burden of proof at the due process hearing, but has also met its burden to have the hearing officer's determination reversed.

20

**CONCLUSION**

Based on the arguments above the plaintiff requests that this Court issue a

Summary Judgment for the Plaintiff and against the Defendant and issue a finding that

Options PCS did not deny the student a FAPE.

Respectfully submitted,
_____/s/_____
Paul S. Dalton, Esq
D.C. Bar No. 439118
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)