UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **OPTIONS PUBLIC CHARTER SCHOOL** : | |
| : | |
| **Plaintiff** : | |
| : | |
| v. : | CIVIL ACTION NO. 06-1004 (PLF) |
| : | |
| **CAMILLE HOWE,** : | |
| as next friend of the minor child, : | |
| A.H. *et. al.* : | |
| : | |
| **Defendants** : | |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Fed .R. Civ. P. Rule 56 and LCvR 7 (h), the Plaintiffs hereby submit the following Statement of Material Facts to which there is no genuine issue:

1. Plaintiff, the Options Public Charter School is a District of Columbia Public Charter School which has elected to be its own local education agency (LEA) under IDEA, for special education issues. AR at 27.

2. Defendant, Camille Howe, is the legal guardian of her minor child, A.H., and they are currently residents of the District of Columbia and claimed D.C. residency for all or part of the time during the underlying administrative proceedings. AR. at 26.

3. A.H. is a fourteen (14) year-old student who attended Options for the 2005-2006 academic school year. AR at 27.

4. On October 18, 2005, Options held a multi-discipline team (MDT) meeting to discuss whether A.H. needed special education services. During that meeting Ms. Howe gave consent to Options to initiate evaluations. AR at 28.

5. On January 12, 2006, after several attempts to have Ms. Howe attend another MDT meeting, Options convened the eligibility meeting to discuss the evaluations and decide whether A.H. was eligible for special education services. AR at 114, 118.

6. The members of the MDT meeting agreed that A.H. did qualify for special education services as a learning disabled child, and the team agreed that she needed a self-contained special education program. Both the mother and father of A.H. agreed to this finding. AR at 114.

7. On January 26, 2006, the MDT convened again to discuss the IEP and placement. AR at 113.

8. The team agreed with the proposed IEP, the goals and objectives, the number of hours of special education and related services and the placement in the self-contained special education program at Options. Tr. at 29-31.

9. The father, Gregory Bush signed and approved the IEP. AR at 106.

10. After the father left, the mother raised an objection to the full-time self-contained program and convinced the special education coordinator (SEC) at Options to reduce the number of hours and the team agreed to lower the number of special education hours to fifteen (15) hours a week, down from twenty-four (24) hours a week. AR at 106.

11. The related service of half an hour of counseling remained unchanged. AR at 106.

12. On March 13, 2006, the mother filed a due process complaint, alleging:

    > Whether this student was denied FAPE due to the failure of DCPS and/or Options PCS to evaluate the student in all areas of suspected disability prior to making a determination of the appropriate disability code and special education eligibility.
    > Whether this student was denied FAPE due to the failure of DCPS and/or Options PCS to provide her with an educational program consistent with her current IEP.
    > Whether this student was denied FAPE due to the failure of DCPS and/or Options PCS to convene a legally constituted IEP team meeting to make the eligibility determination, determine the appropriate disability code and to develop an appropriate IEP and educational program for the student.
    > Whether this student was denied FAPE due to Options PCS changing the number of service hours on the IEP without the participation of the parent or IEP team.
    > Whether this student is entitled to an award of compensatory education due to lost services based upon violations regarding the student's IEP, services and/or placement. AR at 29.

13. On March 27, 2006, Options convened a resolution meeting to resolve the issues of the hearing complaint. AR at 140.

14. The resolution session ended without success because the student's mother and father could not agree to anything regarding the child's IEP. AR at 140-141.

15. On May 12, 2006, the District of Columbia Public School, Student Hearing Office convened a due process hearing with Ms. Tonya Butler-Truesdale presiding as the hearing officer. AR at 72.

16. Mr. Paris Adon, the special education coordinator, testified that Options began the testing process because of learning difficulties the student was experiencing. Tr. at 29-31. He further testified no one questioned the full-time special education program until after the father, Mr. Bush left the January 26, 2006 IEP

        meeting. Tr. at 34-37. He testified that the mother and the team continued without the father for hours and decided to lower the hours because of mother's insistence. *Id.*

17. Dr. Cranford, a clinical psychologist, testified that he tested the student and found she was a learning disabled student. He conducted several clinical measures to see whether there were any underlying emotional problems. He testified there were none. In the expert opinion of Dr. Cranford, he concluded there was no need for any additional testing. A.R. 156-168.

18. The defendant, Ms. Howe offered no testimony to refute Mr. Adon's statement of the facts, nor was there any testimony to refute Dr. Cranford's testimony. Tr. at 125-133, 153-168.

19. In fact, the hearing officer, in her May 23, 2006 Hearing Officer's Decision (HOD) states: "The credible testimony of Paris Adon reveals that Options Public Charter School was aware of Petitioner's needs for special education services and attempted to address the concerns of the Petitioner's mother within a reasonable time period." AR at 3.

20. The hearing officer also found Dr. Cranford's testimony credible stating:

> The testimony of Dr. Crawford (*sic*) regarding the sufficiency of the psychological evaluation which employed seven different assessment instruments was also compelling. This hearing officer fins (*sic*) the testimony of Dr. Crawford logical and credible. Dr. Crawford's deduction that the psycho-educational was sufficient given the non-predominate display of emotional triggers lends reason to the schools decision not to immediately employ clinical assessments. *Id.*

21. The defendant, Ms. Howe offered no expert testimony. The only witness presented, Ms. LaTanya Higginbotham did not qualify as an expert in any

educational field, even though her self-proclaimed title is "special education advocate." Tr. at 153-168.

22. The defendant, Ms. Howe did not disturb the testimony of the two witnesses from Options. Yet, the hearing officer, even after stating the Options witnesses were credible stated:

> However, it is entirely conceivable, given the nature of the parent's challenging participation in the hearing, that the mother's participation in the IEP meetings should have alerted Respondent Options that more comprehensive evaluations were warranted. AR at 3.

The hearing officer then goes on to state:

> The candid revelation of the mother of her own disability and the resulting conduct displayed during and after the hearing **conclusively** reveals that further evaluations are warranted." (Emphasis added). *Id*.

23. The hearing officer then ordered Options to fund "independent speech and language evaluations, a clinical evaluation, an occupational therapy assessment, social history, and vision and hearing screening within the superintendent's cost guidelines." AR at 4.

24. The remedy the hearing officer provided was not the remedy the defendant, Ms. Howe requested in the due process complaint. AR at 29.

25. The complaint only requested that DCPS and/or Options PCS be ordered to conduct the following evaluations within 30 calendar days of the date of the Hearing Officer's Decision: Speech/Language Evaluation; Clinical Evaluation; Occupational Therapy Assessment; Social History; Clinical Evaluation; FBA and BIP; and Vision and Hearing Screening. *Id.* The complaint only asked for the independent assessments if Options failed to conduct the evaluations within the thirty days. *Id*.

Respectfully submitted,

/s/
_____
Paul S. Dalton, Esq
D.C. Bar No. 439118
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)